IN MATTER OF ESTATE OF Martin V. SORENSEN, Deceased: Niels P. SORENSEN, Appellant, v. ZIEMKE, and others, Respondent.

Supreme Court

*No. 76–430. Submitted on briefs January 9, 1979.—Decided January 30, 1979.*
(Also reported in 274 N.W.2d 694.)

340

For the appellant the cause was submitted on the brief of *David M. Monson* of Racine.

For the respondents the cause was submitted on the brief of *Constantine, Christensen, Krohn & Kerscher, S.C.,* of Racine.

COFFEY, J. This is an appeal from an October 26, 1976 judgment entered in the Racine county court, Branch I, GILBERT N. GERAGHTY, presiding. The judgment overrules the appellant's objections to the admission to probate of a will executed by one Martin V. Sorensen on October 8, 1963. There were three objections made challenging the will's validity: (1) that the instrument was not duly executed in a manner provided by law; (2) that on October 8, 1963 Martin V. Sorensen lacked the testamentary capacity necessary for a valid execution; (3) that the will's execution was procured by the exercise of fraud and undue influence. On this appeal the only issue raised is as to the trial court's finding that the appellant did not meet the burden

of proof required to establish that the deceased lacked testamentary capacity at the time the will was executed. The appellant-objector, Niels Sorensen, is the testator's father and an heir under a prior will executed by his deceased son.

By an order dated November 18, 1959, Martin V. Sorensen, the testator, was adjudged mentally ill and a proper subject for custodial treatment. The mental commitment proceedings were initiated by the decedent's brother who alleged that the decedent experienced delusions, suspicions and exhibited an excitable nature. At the hearing, the report of the two examining physicians concluded that the decedent was suffering from paranoia and auditory hallucinations and recommended the testator be placed in custody in order to receive institutionalized treatment. In accordance with the court order, Martin V. Sorensen was committed to the Veteran's Administration Hospital in Tomah, Wisconsin.

On December 4, 1959, the testator was found incapable of taking care of himself and mentally incompetent to have charge and management of his property. The court appointed the First National Bank and Trust Company of Racine as legal guardian over the person and estate of Martin V. Sorensen.

The testator remained confined in the Tomah V.A. Hospital until the date of his discharge, July 31, 1963, when he was transferred to the Wood Veteran's Administration Hospital in Milwaukee. The certificate of discharge stated the opinion of the Tomah medical staff was that the decedent had not recovered, but that the discharge would not be detrimental to the public welfare or injurious to the patient.

It is undisputed that the testator's guardianship had not been removed as of October 8, 1963, the date the contested will was executed. The second will named as primary beneficiaries Sorensen's step-brothers and step-

sisters; their respective issue were named as successor beneficiaries, and made no mention of the decedent's father, Niels P. Sorensen, an heir under the prior will.

The hearing on the appellant's objection was held on May 12, 1976, wherein the testimony of one Dorothy Dykstra was received. Dykstra is the only surviving witness to the will and at the time the will was executed she was employed as legal secretary to the attorney who drafted the document. She could not recall the particular execution, or Mr. Martin Sorensen, but gave testimony regarding the meticulous probate practices of her employer, the late Attorney Charles Helm. The trial court took judicial notice of the guardianship and mental commitment files before reaching its decision overruling the three specified objections to probate.

*Issue:*

Did the trial court err in not declaring a will invalid on the basis that the testator lacked the mental capacity to make a testamentary disposition when proof was offered that prior to the will's execution the testator had been declared incompetent and placed under guardianship and remained in the same legal status on the date of the will's execution?

The burden of proof at trial when a will is challenged for want of the testator's testamentary capacity is that of introducing clear, convincing and satisfactory evidence. *Estate of Dobrecevich,* 14 Wis.2d 82, 85, 109 N.W.2d 477 (1960). The standard of review is not whether this court would reach the same findings, but whether the findings should ". . . be affirmed as not being contrary to the great weight and clear preponderance of the evidence. *In Matter of Estate of Becker,* 76 Wis.2d 336, 346, 251 N.W.2d 431 (1977)." *Estate of Evans,* 83 Wis.2d 259, 271, 265 N.W.2d 529 (1978). Therefore, there is a heavy burden upon the appellant-

objector to demonstrate that the trial court erred in concluding that the decedent's lack of mental capacity was not proven by clear, convincing and satisfactory evidence.

The testamentary capacity necessary to execute a valid will requires that the testator have the mental capacity to comprehend the nature, extent and state of affairs of his property, an understanding of his relationship to persons who are or might naturally be expected to be the objects of his bounty and that the testator understand the scope and general effect of the provisions of his will in relation to his legatees and devisees. *Estate of O'Laughlin,* 50 Wis.2d 143, 146, 147, 183 N.W.2d 133 (1971) ; *In re Estate of Evans, supra* at 277. An objector to a will must necessarily prove the contrary by clear, convincing and satisfactory evidence. The appellant introduced two sources of evidence in attempting to prove Martin V. Sorensen lacked the requisite testamentary capacity on October 8, 1963: (1) the testimony of Dorothy Dykstra; and (2) the fact that on November 12, 1959 the testator was legally committed as incapable of caring for himself or his property and his person and property were placed under legal guardianship on December 4, 1959 and remained in the same legal status through the date of the execution of the will in contest.

Dykstra's testimony does not support the appellant's contention. As legal secretary to the drafting attorney, she could neither remember the testator nor the circumstances regarding the execution. She did, however, testify that her employer gave scrupulous attention to the details involved in will drafting, witnessing and execution. A trial court may give consideration to the drafting attorney's impression of the testator's mental

capacity. *Estate of Becker, supra* at 346. In this case the trial court stated the following as a basis for its decision:

"I personally knew Mr. Helm for a period of more than twenty years as a fellow member of the Bar, and more recently, as Judge of the Probate Court. Mr. Helm was an extremely competent and conscientious attorney in this community for over fifty years. He was primarily interested in and adept at the practice of probate law."

The appellant primarily relies on the 1959 adjudication of incompetency and the need for placing Sorensen and his property under guardianship. The appellant cites the *Estate of Culver*, 22 Wis.2d 665, 126 N.W.2d 536 (1964) as authority for the proposition that a testator lacks the mental capacity to execute a valid will if it is proven that at the time of execution the testator was insane or suffered from insane delusions. The fact that the testator was mentally committed in 1959 is not controlling. The question of a testator's competency is determined as of the time of the execution. *In re Estate of Dobrecevich, supra* at 88–89. This court has also recognized that one adjudicated mentally incompetent or subject to guardianship may have lucid intervals during which the individual possesses sufficient testamentary capacity. *Estate of Becker, supra* at 345; *Estate of Zink,* 15 Wis.2d 527, 531, 113 N.W.2d 420 (1962).

The appellant's contention that Sorensen lacked mental capacity is rebutted by the fact that the October 8, 1963 will reflects that the testator was able to convey his wishes and the extent of his estate to the drafting attorney, identify beneficiaries expected to be the objects of his bounty and explain the reasons for the nominal bequests given to two of the named legatees and the

exclusion of certain relatives. The testator's ability to perform the foregoing demonstrates testamentary capacity as outlined in the general criteria set forth in *Estate of O'Laughlin, supra. See: Estate of Evans, supra* at 278.

The fact of legal guardianship and evidence of an inability to handle one's business affairs is a relevant factor in reaching a decision on testamentary capacity, but it is not solely controlling. *Estate of Evans, supra* at 279; *Deleglise v. Morrissey,* 142 Wis. 234, 125 N.W. 452 (1910). We hold that the appellant did not carry the burden of proving Martin V. Sorensen lacked testamentary capacity on October 8, 1963 when his last will and testament was executed. As this court has often stated before, legal guardianship in and of itself does not prove the testator lacked the capacity to execute a valid will. *Estate of O'Laughlin, supra* at 147–48; *Estate of Zink, supra* at 531; *Estate of Dobrecevich, supra* at 86; *Estate of Staab,* 166 Wis. 587, 166 N.W. 326 (1918); *Will of Slinger,* 72 Wis. 22, 37 N.W. 236 (1888).

*By the Court.*—Judgment affirmed.