IN RE the ESTATE OF Elva FELT, deceased:

Juanita RANDALL, Appellant,

v.

Wayne FELT, Respondent.

Court of Appeals

*No. 01–2597. Submitted on briefs March 4, 2002.—Decided May 30, 2002.*

2002 WI App 157

(Also reported in 647 N.W.2d 373.)

On behalf of the appellant, the cause was submitted on the briefs of *James B. Noble* of *James B. Noble, S.C.*, La Crosse.

On behalf of the respondent, the cause was submitted on the brief of *Joseph G. Veenstra* of *Johns & Flaherty, S.C.*, La Crosse.

Before Dykman, Roggensack, and Deininger, JJ.

¶ 1. DEININGER, J.    Juanita Randall appeals an order entered in probate proceedings relating to her mother's estate. The respondent, Wayne Felt, who is

Randall's brother, objected to the inventory Randall filed as personal representative of the estate. Randall claims the probate court erred in concluding that issue preclusion prevents her from asserting that two accounts she held jointly with her mother passed to her by right of survivorship, and in ordering that the accounts therefore be inventoried in the estate as property subject to administration. We agree with Randall that, because the issue was not "actually litigated" in the predecessor guardianship proceedings, she is not precluded from having the validity of the joint accounts litigated in the probate proceeding. Accordingly, although we affirm the appealed order, we remand for further proceedings on the status of the disputed accounts.[1]

## BACKGROUND

¶ 2.    The deceased, Elva Felt, Randall's and Wayne Felt's mother, was under guardianship at the time of

---

[1] The only written order in the record relating to the proceedings which spawned this appeal was entered on September 24, 2001, and it deals exclusively with Randall's removal as personal representative and the appointment of a trust company in her stead. Randall does not challenge her removal as personal representative, and her notice of appeal recites that she is appealing "an Order made orally on September 19, 2001." Appeals from oral rulings are not permitted, however. *See Ramsthal Adver. Agency v. Energy Miser, Inc.*, 90 Wis. 2d 74, 75, 279 N.W.2d 491 (Ct. App. 1979). We thus deem Randall to have appealed the September 24th order, which brings before us all prior rulings adverse to her. *See* WIS. STAT. RULE 809.10(4). Because Randall does not seek relief from the express terms of the September 24th order, we affirm it but grant Randall the relief she requests, a trial on the issue of whether the disputed accounts passed to her as surviving joint tenant or must be inventoried in the estate.

her death. No evidentiary proceedings were conducted in either the guardianship or the estate relating to the circumstances surrounding the establishment of the disputed accounts. The record does contain photocopies of two Account Agreements, which were apparently placed in the probate file at a hearing on September 19, 2001, but neither appears to have been formally admitted as evidence. The record also contains a transcript of an August 30, 2000 hearing on the appointment of a guardian of the estate for Elva Felt, and a copy of the final account in the guardianship, but no other documents from the guardianship file. Accordingly, much of our background summary is based on the assertions of counsel, made either in the briefs filed in this court or during oral argument in the probate court.

¶ 3. Randall was appointed guardian of Elva Felt's person in March 2000. At about this same time, a checking account that Elva held jointly with her husband and the parties' father, Lawrence Felt, was retitled to include Randall as a third joint tenant. A "Revised Signature Card" for this account, bearing the date March 8, 2000, has the following account option marked with an "x":

> Joint Survivorship Account: THIS AC-
> COUNT . . . IS JOINTLY OWNED BY THE PARTIES
> NAMED HEREON. UPON THE DEATH OF ANY OF
> THEM, OWNERSHIP PASSES TO THE SURVI-
> VOR(S).

The document names Lawrence, Elva and Randall as "account owners" and appears to contain each of their signatures.

¶ 4. A second account, this one a "money market account," was apparently opened on March 24, 2000. The "Account Agreement" names Elva and Randall as

owners, and it has the same joint survivorship option selected as quoted above for the checking account. This document, however, bears only Randall's signature, and it indicates an "initial deposit" of $145,485.73. The record contains no evidence regarding the source of the initial deposit into the money market account.

¶ 5.  Lawrence Felt died on March 27, 2000. In August of that year, Wayne Felt petitioned the court to appoint a trust company guardian of Elva's estate, alleging that Elva had property requiring administration. Randall opposed the petition, arguing that other "arrangements . . . were made by the family" to meet Elva's needs following Lawrence's death. When the court inquired as to the nature of those arrangements, Randall's counsel replied, "[t]he joint tenancy on the bank accounts." Following a discussion among counsel for Randall and Wayne Felt, Elva's guardian ad litem, and the court, the court stated the following:

> We have a situation where an individual who was found to be incompetent, whose finances prior — at that point were in joint tenancy with her husband who has since died. She now has an estate over whom nobody has management authority other than the guardian of the person, who has a conflict of interest in terms of being a joint tenant. I think certainly that there's an appearance of impropriety, and certainly she was not competent — Mrs. Felt was not competent at the time that she entered into that joint tenancy.

The court then found "that there is a need for a guardian of the estate, given the circumstances and certainly the questionable validity of the joint tenancies," and it appointed Randall to serve as guardian of her mother's estate.

¶ 6.  Randall then filed a guardianship inventory which apparently included both of the disputed ac-

counts. Elva Felt died on October 22, 2000, and Randall was appointed personal representative in accordance with Elva's will. In her capacity as guardian, Randall filed a final guardianship account showing a final asset balance of $254,480.40, of which some $151,420.53 was attributable to the two disputed accounts. Randall, in her individual capacity, filed a receipt in the guardianship for the latter sum as surviving joint tenant on the accounts, and the inventory she filed in the estate included only Elva's residence, valued at $83,100, and a $9,077 savings account. Wayne Felt objected to the inventory, claiming that the disputed accounts should be included as property subject to administration in the estate. He asserted that the court had previously ruled in the guardianship proceedings that Elva "was not competent to agree to the purported joint tenancy at the time it was created."

¶ 7. The probate court conducted a hearing on Wayne's objection to the inventory but took no testimony.[2] The court ruled that "the guardianship precludes any additional argument in this court . . . about the competency of a ward to give joint tenancy in property . . . . That issue has been resolved." The court then ordered that "all of the moneys which were supposedly put into a joint account should be returned and inventoried in this estate." Before setting over the issue of whether Randall should continue as personal representative, the court also ruled that WIS. STAT.

[2] Circuit Court Judge Ramona Gonzalez presided over the estate proceedings and entered the appealed order. The earlier guardianship proceedings were before Judge Michael Mulroy.

§ 705.03(1) (1999–2000)[3] did not apply, as Randall maintained, because Lawrence Felt had not removed the moneys from joint accounts and then established new ones.

¶ 8. The court subsequently entered an order removing Randall as personal representative. She appeals, challenging only the court's rulings regarding the joint accounts.

## ANALYSIS

■■■

¶ 9. The doctrine of issue preclusion is "designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). A threshold prerequisite for application of the doctrine, however, is that in order to be precluded from "relitigating" an issue, a party must have "actually litigated" it previously. *Deminsky v. Arlington Plastics Mach.,* 2001 WI App 287, ¶ 39, 249 Wis. 2d 441, 638 N.W.2d 331, *review granted,* 2002 WI 23, 250 Wis. 2d 555, 643 N.W.2d 93. An issue is "actually litigated" when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1980).[4] We agree with Randall that that did not happen here.

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. WISCONSIN STAT. § 705.03(1) is quoted below in the Analysis section of this opinion.

[4] "An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment . . . a motion for

¶ 10. As we have noted, no testimony was taken or evidence introduced during either the guardianship or estate proceedings. The only issue before the guardianship court on August 30, 2000, was whether a guardian of the estate should be appointed for Elva Felt. The establishment of the joint accounts was discussed among counsel and the court, but far from "determining" the status and validity of the accounts, the court simply relied on their existence as a factor in deciding that a guardian of the estate should be appointed. The court's comments suggest that it believed the status of the disputed accounts could be litigated at a later date if necessary, and that the appointment of Randall as guardian of the estate would facilitate the future resolution of the issue:

> Obviously [Randall] would have an obligation at that point to file an inventory and an accounting . . . .
>
> Mr. [Wayne] Felt will have the opportunity, obviously, as an interested party to review the inventory that's compiled, the accountings that are filed on a regular basis and challenge those as being insufficient or untruthful.
>
> I do find, as I certainly more than hinted, that there is a need for a guardian of the estate, given the circumstances and certainly *the questionable validity of the joint tenancies.*

(Emphasis added.)

¶ 11. The "questionable validity" of the joint accounts was not subsequently litigated in the guardianship, however, and Elva Felt died less than two months

directed verdict, or their equivalents, as well as on a judgment entered on a verdict." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1980).

after Randall's appointment as guardian of her estate. Wayne suggests that because Randall included the two accounts in the guardianship inventory, she cannot now claim them to be joint survivorship accounts. The fact that the accounts were inventoried in the guardianship is not conclusive on the question of their ultimate disposition, however. Randall was obligated as Elva's guardian to inventory all of Elva's property, which included the joint accounts during Elva's lifetime. *See* WIS. STAT. §§ 880.18 and 858.01.

¶ 12.   Whether the accounts on which Randall was named a joint tenant were validly created, and whether they passed to her on Elva's death, were thus first placed at issue when Wayne objected to the inventory Randall filed in the estate proceedings. We conclude that Randall is entitled to have those questions litigated in the estate, and that the trial court erred by not permitting her to do so.

¶ 13.   Wayne implies, however, that there may be nothing to litigate. He contends that because the two joint accounts were established at a time when Elva was not competent, which Randall all but concedes, the joint tenancies created between Randall and her mother are invalid as a matter of law. We disagree. We note first that Elva's being placed under guardianship does not "in and of itself" prove that she lacked the capacity to make testamentary dispositions. *Sorensen v. Ziemke*, 87 Wis. 2d 339, 346, 274 N.W.2d 694 (1979).

¶ 14.   Moreover, Elva's capacity to authorize the addition of Randall as a joint tenant would be controlling only if the accounts in question had originally been

in Elva's sole name. That does not appear to be the case, however. Lawrence was living when the checking account was retitled and the money market account opened. He was a joint tenant on the former, and although the source of the funds deposited in the latter is not established in the record, Randall asserts that these funds also derived from assets in which Lawrence had an interest. WISCONSIN STAT. § 705.03(1) provides in part as follows:

> A joint account belongs, during the lifetime of all parties, to the parties without regard to the proportion of their respective contributions to the sums on deposit and without regard to the number of signatures required for payment. The application of any sum withdrawn from a joint account by a party thereto shall not be subject to inquiry by any person, including any other party to the account and notwithstanding such other party's minority or other disability . . . .

We agree with Randall that if the funds in the two disputed accounts derive from accounts on which Lawrence was a joint tenant, the fact that Elva was incompetent when Randall was added as a joint tenant does not necessarily render the new joint tenancies invalid.

¶ 15. The trial court concluded that WIS. STAT. § 705.03(1) was inapplicable because Lawrence did not withdraw funds from accounts he held jointly with Elva but simply added Randall as a third joint tenant on the accounts. That is apparently what occurred with the checking account on March 8, 2000. We conclude, however, that a "two-step" process is not necessary in order for § 705.03(1) to apply. Lawrence was empowered to withdraw the entire balance in the checking account without being "subject to inquiry"

573

from Elva, "notwithstanding ... [her] disability." *Id.*; *see also Wachniak v. Frank*, 140 Wis. 2d 429, 432, 410 N.W.2d 621 (Ct. App. 1987) ("The statute bars anyone ... from looking into or questioning a party's application of sums withdrawn from the account during the lifetime of the joint parties."). If Lawrence could do that, we see no reason why the statute does not also permit Lawrence to add Randall as a third joint tenant on the account.[5]

¶ 16. The foregoing analysis may or may not apply to the money market account. The money market account appears to have been newly established as of March 24, 2000, and as we have noted, the source of the $145,000 initial deposit is not disclosed in the record. Also, on this account, only Elva and Randall are named as joint owners, and only Randall's signature is shown on the "Account Agreement." It could be that Lawrence withdrew these funds from an account or accounts he held jointly with Elva and instructed Randall to establish the money market account in the fashion she did. If so, as we have discussed, Elva's incompetency would not have prevented Lawrence from doing so. WIS. STAT. § 705.03(1). On the other hand, if Randall establishes that the money market deposit derived from Lawrence's solely owned funds, § 705.03 would not be implicated.

---

[5] Elva's guardian ad litem asserted at the guardianship hearing that a bank she had contacted would not have permitted the addition of a third joint tenant without the consent of both original joint tenants. Regardless of what a bank may require as a matter of policy, however, we conclude that Lawrence could legally add Randall as a joint tenant without Elva's knowledge or consent pursuant to WIS. STAT. § 705.03(1).

¶ 17. Even if Randall establishes that Lawrence authorized her addition as a joint tenant on the disputed accounts, however, the inquiry into the validity of Randall's survivorship interest is not at an end. WISCONSIN STAT. § 705.02(1)(a) provides that the "joint survivorship" language (quoted above at ¶ 3) that was selected on the "Account Agreements" for the two disputed accounts "shall be effective to create the multiple-party accounts described in this subchapter." WISCONSIN STAT. § 705.04(1), in turn, provides the following:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent *unless there is clear and convincing evidence 'of a different intention at the time the account is created.* If there are 2 or more surviving parties, their ownership interests during lifetime shall remain subject to s. 705.03(1); and the right of survivorship continues between the surviving parties.

(Emphasis added.) Thus, although the accounts presumptively passed to Randall as surviving joint tenant on Elva's death, Wayne may defeat the presumption by presenting clear and convincing evidence that Lawrence and Randall intended only to facilitate Randall's management of the accounts for Elva's benefit, not to create a survivorship interest in Randall.[6] *Pfeifer v. Pfeifer*, 1 Wis. 2d 609, 612–13, 85 N.W.2d 370 (1957).

---

[6] At the hearing before the probate court, Wayne's counsel produced a letter allegedly written by an attorney who formerly represented Randall. The letter apparently disavows an intent on Randall's part to have created joint survivorship accounts. The letter is not in the record.

## CONCLUSION

¶ 18. For the reasons discussed above, we remand to the circuit court for further proceedings on the issue of whether the accounts which Juanita Randall claims passed to her as surviving joint tenant are to be classified as her survivorship property or whether they must be included as property subject to administration in the Elva Felt Estate.

*By the Court.*—Order affirmed and cause remanded with directions.

---

We also note that Randall concedes that if Wayne can establish by clear and convincing evidence that either (1) Lawrence was incompetent when he established the joint accounts with Randall, or (2) that she unduly influenced him to do so, Randall's survivorship interest may be defeated. In support of these propositions, Randall cites cases involving will contests. *See Sorensen v. Ziemke*, 87 Wis. 2d 339, 274 N.W.2d 694 (1979); *Vickman v. Christensen*, 6 Wis. 2d 48, 93 N.W.2d 873 (1959). We do *not* address in this opinion whether the concepts of testamentary capacity and undue influence apply equally to the execution of wills and the creation of joint survivorship accounts. We note only Randall's acknowledgement that these concepts may bear on the validity of her survivorship rights in the accounts. *See, e.g., Neis v. Dithmar*, 68 Wis. 2d 776, 780, 229 N.W.2d 573 (1975) (considering a claim that a deceased "lacked the necessary mental capacity" to establish a joint account).