CITY OF SHEBOYGAN,
Plaintiff-Appellant,

v.

Steven NYTSCH,
Defendant-Respondent.†

Court of Appeals

*No. 2005AP2767. Submitted on briefs June 29, 2006.
—Decided August 2, 2006.*

2006 WI App 191

(Also reported in 722 N.W.2d 626.)

† Petition to review filed.

74

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Charles C. Adams*, Assistant City Attorney, Sheboygan.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Chad A. Lanning* of *Law Offices of Barry S. Cohen, S.C.*, Elkhart Lake.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. In this drunk driving matter, the City of Sheboygan argues the circuit court erred in suppressing evidence for lack of probable cause to arrest and dismissing its case against Steven Nytsch for lack of evidence. The court based its decision on issue preclusion asserted to arise from a circuit court order reviewing a Department of Transportation (DOT) administrative hearing on the administrative suspension of Nytsch's driver's license. We hold that the City is not precluded from litigating the probable cause issue on the merits because the issue was not actually litigated, and it would be fundamentally unfair to apply issue preclusion under the circumstances of this case. We reverse the circuit court's judgments and remand the case for further proceedings.

## Facts

¶ 2. On May 7, 2005, Nytsch was arrested for operating a motor vehicle while intoxicated and for operating a motor vehicle with a prohibited alcohol concentration. The arresting officer provided Nytsch with notice of intent to suspend his driving privileges for six months.

¶ 3. Nytsch requested a hearing on the proposed administrative suspension. WISCONSIN STAT. § 343.305(8)(b)1. (2003–04)[1] authorizes such a request.[2] Section 343.305(8)(b)2. sets forth the issues the DOT hearing examiner is limited to addressing at the administrative hearing. One such issue is whether prob-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] WISCONSIN STAT. § 343.305(8)(b) provides in pertinent part:

1. Within 10 days after the notification under par. (a), or, if the notification is by mail, within 13 days, excluding Saturdays, Sundays and holidays, after the date of the mailing, the person may request, in writing, that the department review the administrative suspension. The review procedure is not subject to ch. 227. The department shall hold the hearing on the matter in the county in which the offense allegedly occurred or at the nearest office of the department if the offense allegedly occurred in a county in which the department does not maintain an office. The department shall hold a hearing regarding the administrative suspension within 30 days after the date of notification under par. (a). The person may present evidence and may be represented by counsel. The arresting officer need not appear at the administrative hearing unless subpoenaed under s. 805.07, but he or she must submit a copy of his or her report and the results of the chemical test to the hearing examiner.

2. The administrative hearing under this paragraph is limited to the following issues:

a. The correct identity of the person.

b. Whether the person was informed of the options regarding tests under this section as required under sub. (4).

able cause existed for the arrest. Sec. 343.305(8)(b)2.e. On June 2, 2005, a DOT hearing examiner suspended Nytsch's driving privileges. In its written decision, the examiner stated that it had addressed the requirements of § 343.305(8) and determined that the criteria for administrative suspension had been satisfied.

¶ 4. As provided in WIS. STAT. § 343.305(8)(b) and (c), Nytsch sought judicial review of the administrative suspension and a stay of the suspension pending judi-

> bm. Whether the person had a prohibited alcohol concentration or a detectable amount of a restricted controlled substance in his or her blood at the time the offense allegedly occurred.
>
> c. Whether one or more tests were administered in accordance with this section.
>
> d. If one or more tests were administered in accordance with this section, whether each of the test results for those tests indicate the person had a prohibited alcohol concentration or a detectable amount of a restricted controlled substance in his or her blood.
>
> e. Whether probable cause existed for the arrest.
>
> f. Whether the person was driving or operating a commercial motor vehicle when the offense allegedly occurred.
>
> g. Whether the person had a valid prescription for methamphetamine or one of its metabolic precursors or gamma-hydroxybutyric acid or delta-9–tetrahydrocannabinol in a case in which subd. 4m. a. and b. apply.
>
> 3. The hearing examiner shall conduct the administrative hearing in an informal manner. No testimony given by any witness may be used in any subsequent action or proceeding. The hearing examiner may permit testimony by telephone if the site of the administrative hearing is equipped with telephone facilities to allow multiple party conversations.
>
> 4. The hearing examiner shall consider and determine the reliability of all of the evidence presented at the administrative hearing. Statements and reports of law enforcement officers are subject to the same standards of credibility applied to all other evidence presented.

cial review.[3] In his letter requesting the stay, Nytsch represented that his mother is profoundly disabled and he is solely responsible for her care.

¶ 5. The judicial review hearing took place on June 28. Pursuant to WIS. STAT. § 343.305(8)(c)1., the City of Sheboygan assistant city attorney represented the interests of the DOT at the hearing. In response to the court's question, "Where are we in the judicial review?" the assistant city attorney stated, "Well, obviously we are not a party to the administrative suspension, so I don't have any information on what happened." Nytsch asked the court to resolve the issues set forth in § 343.305(8)(b)2. in his favor and to vacate the administrative suspension. The assistant city attorney responded, "City opposes it, but we will leave the Court to make its decision." The court concluded, "Since there is no one here basically to oppose the request of Mr. Nytsch, the Court will find in Mr. Nytsch's favor pursuant to the request made by counsel. So he can drive for a little while." Also on June 28, the court issued a written order staying Nytsch's administrative suspen-

---

[3] WISCONSIN STAT. § 343.305(8)(c) provides in pertinent part:

1. An individual aggrieved by the determination of the hearing examiner may have the determination reviewed by the court hearing the action relating to the applicable violation listed under sub. (3)(a) or (am). If the individual seeks judicial review, he or she must file the request for judicial review with the court within 20 days of the issuance of the hearing examiner's decision. The court shall send a copy of that request to the department. The judicial review shall be conducted at the time of the trial of the underlying offense under s. 346.63. The prosecutor of the underlying offense shall represent the interests of the department.

. . . .

4. A request for judicial review under this subsection does not stay any administrative suspension order.

78

sion. Subsequently, on July 5, 2005, the court issued an order vacating the suspension, stating that it had conducted a judicial review of the suspension and found in Nytsch's favor because the City presented it with no evidence on the issues set forth in § 343.305(8)(b)2.

¶ 6. On July 14, Nytsch filed a motion to suppress evidence based on lack of probable cause to arrest. Nytsch maintained that the doctrine of issue preclusion[4] prevented litigating the issue of probable cause because probable cause had already been considered in both the administrative suspension and the judicial review hearings.

¶ 7. The court held the motion hearing on September 28. Nytsch's attorney asserted:

> It is my belief that based on the City's failure to meet its burden on the probable cause issue at the judicial reviewing hearing despite having a full and fair opportunity to do so, that the City is now collateral[ly] estopped from challenging the probable cause to arrest if it's raised by the defendant. My position is that . . . the Court should grant Mr. Nytsch's motion to suppress based on a lack of probable cause because that issue has already been determined in Mr. Nytsch's favor at the judicial reviewing hearing.

The assistant city attorney countered that Nytsch's request for judicial review did not raise the issue of probable cause but only highlighted his difficult personal and family problems and asked for an opportunity to defend against the charges before suffering the consequences. The assistant city attorney explained that it was because of these problems that the City did

---

[4] Nytsch referred to the doctrine as collateral estoppel; however, in Wisconsin "the term issue preclusion replaces collateral estoppel." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995).

not actively oppose the vacation of the administrative suspension. The assistant city attorney admitted that he did not understand his role in representing the interests of the DOT at the suspension hearing and complained that it was an unfunded mandate.

¶ 8. The trial court granted Nytsch's motion and dismissed the cases. In doing so, the court adopted the rationale of an unpublished court of appeals opinion, *Village of Westfield v. Mashek*, No. 1994AP361, unpublished slip op. (Wis. Ct. App. Nov. 10, 1994). The City appeals.

## Standard of Review

■

¶ 9. The sole question we address on appeal is whether the trial court properly applied the doctrine of issue preclusion to the facts of this case. Whether issue preclusion is a potential limit on litigation in an individual case is a question of law, on which we give no deference to the circuit court's decision. *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 15, 281 Wis. 2d 448, 699 N.W.2d 54. However, whether the circuit court properly applied, or refused to apply, issue preclusion in an individual case is a discretionary decision. *Id.*

## Discussion

■

¶ 10. The doctrine of issue preclusion is "designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). In *Mrozek*, 281 Wis. 2d 448, ¶ 17, our supreme court concisely summarized the doctrine of issue preclusion set forth in *Michelle T.* and

how it is to be applied. We repeat that summary here:

> In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and be necessary to the judgment. If the issue actually has been litigated and is necessary to the judgment, the circuit court must then conduct a fairness analysis to determine whether it is fundamentally fair to employ issue preclusion given the circumstances of the particular case at hand. For this analysis, the circuit court considers any of the following factors that are relevant to its decision: (1) whether the party against whom preclusion is sought could have obtained review of the judgment; (2) whether the question is one of law that involves two distinct claims or intervening contextual shifts in the law; (3) whether there are apt to be significant differences in the quality or extensiveness of the two proceedings such that relitigation of the issue is warranted; (4) whether the burden of persuasion has shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and (5) whether matters of public policy or individual circumstances would render the application of issue preclusion fundamentally unfair, including whether the party against whom preclusion is sought had an inadequate opportunity or incentive to obtain a full and fair adjudication of the issue in the initial litigation. Some of these factors are decided as questions of law, e.g., factors 1, 2 and 4. Other factors require the circuit court to exercise its discretion, for example, factors 3 and 5.

*Mrozek*, 281 Wis. 2d 448, ¶ 17 (citations omitted).

■

¶ 11. Thus, a threshold prerequisite for application of the doctrine is that, in order to be precluded from "relitigating" an issue, a party must have "actually litigated" it previously. *Randall v. Felt*, 2002 WI App 157,

81

¶ 9, 256 Wis. 2d 563, 647 N.W.2d 373. There are many reasons why a party may choose not to contest an assertion in a particular action. RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982). If preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation. *Id.*

¶ 12. Nytsch argues that the question of probable cause to arrest has been "actually litigated" because the City, which was on notice that the June 28, 2005 hearing was a judicial review hearing of the DOT examiner's decision, had the opportunity to litigate the question of probable cause. That is not the law. An issue is "actually litigated" when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Randall*, 256 Wis. 2d 563, ¶ 9. By contrast, a determination is not conclusive "as to issues which might have been but were not litigated and determined in the prior action." RESTATEMENT (SECOND) OF JUDGMENTS at § 27 cmt. e. As explained in the Restatement:

> An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties.

*Id.*

¶ 13. The question of whether the arresting officer had probable cause to arrest Nytsch was not "actually

82

litigated" during the judicial review hearing. The court's order vacating the administrative suspension is more akin to the Restatement's examples of nonlitigated circumstances, such as when an admission is given and evidence relating to the issue is never heard before a court and therefore a considered judgment is never made.

¶ 14. No testimony was taken or evidence introduced during the judicial review hearing. In fact, the entire discussion about the administrative suspension spans only one and one-half pages of the transcript from the hearing. The words "probable cause" were never even spoken during the hearing. For whatever reason, the City chose not to contest the question of probable cause to arrest other than to make the blanket statement that it opposed Nytsch's motion to vacate the administrative suspension. The court then did not have the benefit of deciding the issue in an adversarial context. Indeed, the court's comments suggest that the issues underlying the status of Nytsch's driving privileges, which would include probable cause to arrest, would be litigated at a later date: "Since there is no one here basically to oppose the request of Mr. Nytsch, the Court will find in Mr. Nytsch's favor pursuant to the request made by counsel. So he can drive for a little while." Because the question of probable cause to arrest was not "actually litigated," the City is not precluded from litigating that issue on the merits.

¶ 15. Our conclusion is bolstered by an application of the factors bearing upon fundamental fairness. One of those factors requires us to examine the differences in the quality or extensiveness of the proceedings. *Mrozek*, 281 Wis. 2d 448, ¶ 17 (citing *Michelle T.*, 173

Wis. 2d at 688–89.). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979).

¶ 16. WISCONSIN STAT. § 343.305(8)(c)1. states, "The judicial review *shall* be conducted at the time of the trial of the underlying offense under [WIS. STAT. §] 346.63." (Emphasis added.) The prosecutor of the underlying offense is to represent the interests of the DOT for purposes of the judicial review. Sec. 343.305(8)(c)1. Adhering to this procedure, the court would hold a trial de novo at which the issue of probable cause to arrest would be litigated. Before rendering judgment on the probable cause question, the court could take sworn testimony from witnesses, assess the credibility of those witnesses and weigh the prosecuting authority's and the defendant's evidence. Here, the court deviated from the legislative mandate; it conducted the cursory judicial review separate from the trial of the underlying offense. The summary nature of the hearing the court conducted calls into question the quality and extensiveness of the proceeding and makes the court's determinations inappropriate for the application of the preclusion doctrine.[5] *See Montana*, 440 U.S. at 164 n.11.

---

[5] In *State v. Kasian*, 207 Wis. 2d 611, 617–18, 558 N.W.2d 687 (Ct. App. 1996), we applied this fairness factor. We held that a probable cause determination in a DOT administrative review proceeding does not preclude consideration of the same issue at the circuit court level in a criminal proceeding. *Id.* We noted that the administrative review proceeding set out in WIS. STAT. § 343.305(8) is highly informal and nonadversarial. *Kasian*, 207 Wis. 2d at 618. Here, however, the decision to which Nytsch seeks to give preclusive effect is that of the circuit court, not the DOT hearing examiner.

¶ 17. Another fairness factor inquires into matters of public policy. *See Mrozek*, 281 Wis. 2d 448, ¶ 17. What concerns us most is the adverse impact on public safety that would result from allowing issue preclusion to prevent relitigation of probable cause under the circumstances of this case. The perils of drunk driving are well documented, and there is no doubt that society has a strong interest in protecting itself from the hazards that these drivers present. The loss of evidence resulting from the allegedly illegal arrest may mean that the City has no case. Thus, the City's ability to prosecute and the circuit court's decision-making ability would be hamstrung by a summary court decision conducted contrary to the legislative mandate.

¶ 18. For the above reasons, we hold that the circuit court erred in granting Nytsch's motion to suppress and in dismissing the cases. Accordingly, we reverse and remand.[6]

---

[6] The circuit court's adoption of the rationale of *Village of Westfield v. Mashek*, No. 1994AP361, unpublished slip op. (Wis. Ct. App. Nov. 10, 1994), gives us serious pause. While the circuit court acknowledged that it could not cite the unpublished opinion for precedential value, *see* WIS. STAT. RULE 809.23(3), it proceeded to embrace the unpublished opinion's reasoning without subjecting its premise to independent verification.

This court is not so naïve as to believe that unpublished opinions, whether one-judge opinions, per curiam opinions or authored opinions sit in a file serving as dinner for book lice. [A tiny, soft-bodied wingless *psocoptera,* that actually feeds on molds and other organic matter found in ill-maintained works. *See* http://www.earthlife.net/insects/psocopta.html, last visited June 29, 2006.] The ingenious methods members of the bench and bar employ to use unpublished opinions is well known to this court.

A no-citation rule may prevent counsel from urging by name an unpublished decision as a binding or authoritative precedent. But

the rule will not prevent counsel from trying to divine the reasoning of that decision and then using it in the case at bar. Further, it will not prevent wise counsel from attempting to insinuate its existence and its persuasive force. After all, the reasoning that led to the decision is imperishable, however mortal or vanishing its printed form is said to be.

Experience in the United States Court of Appeals for the Fourth Circuit shows that trying to impose a non-precedent status on decisions by declaring them non-citable is like attempting to throw away a boomerang. The earlier decisions keep coming back because of lawyers' and judges' ingrained devotion to the force of stare decisis.

PAUL D. CARRINGTON ET AL., JUSTICE ON APPEAL 37 (1976), *quoted in* MICHAEL S. HEFFERNAN, APPELLATE PRACTICE AND PROCEDURE IN WISCONSIN, § 17.4 (3d ed. 2002).

The bench and bar must be guarded in their use of unpublished opinions because of the role of the Wisconsin Court of Appeals. This court has two functions; its primary function is error correcting and its secondary function is law defining and law development. *Cook v. Cook,* 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997). "With few exceptions, unpublished opinions are issued in the vast majority of cases that call on a court only to correct error. Unpublished opinions merely inform the parties and the lower court of why the court of appeals concluded that the lower court did or did not err." Patrick J. Schiltz, *The Citation of Unpublished Opinions In The Federal Courts of Appeals,* 74 Fordham L. Rev. 23, 32 (2005). An unpublished opinion does not establish a new rule of law, apply an existing rule of law to a significantly different fact situation, resolve or identify a conflict between existing opinions, contribute to the legal literature by collecting cases, or decide a case of substantial and continuing public interest. *See* WIS. STAT. RULE 809.23(1)(a)1.-5.

Because an unpublished opinion is intended to be a one-time explanation to a limited audience, it will generally say almost nothing about the facts, because its intended audience —the parties and the lower court—are already familiar with the

86

facts. Schiltz, *supra,* at 33. An appellate court's holding cannot be understood outside of the factual context; without knowing the facts it is difficult to discern what an unpublished opinion actually held and easy for attorneys and judges to be misled. *Id.*

In this case, reliance on the rationale of *Village of Westfeld* was misplaced. After a review of that decision, we conclude that it was wrongly decided. The primary flaw in *Village of Westfield,* is our failure to apply the issue preclusion test set out in *Michelle T. v. Crozier,* 173 Wis. 2d 681, 495 N.W.2d 327 (1993). While we cited to *Michelle T.,* 173 Wis. 2d at 687, for the definition of issue preclusion (then called collateral estoppel), we inexplicably turned to *State ex rel. Flowers v. DHSS,* 81 Wis. 2d 376, 387, 260 N.W.2d 727 (1978), for the test that would be applied—"[t]he four elements of the collateral estoppel test have been identified as including: (1) a valid, final judgment; (2) identity of issues; (3) privity of parties; and (4) issues which have been litigated and necessarily determined." As we discuss in the body of this decision, the proper test to be applied is the looser, equities-based test found in *Michelle T.,* 173 Wis. 2d at 687–89, which asks, in part, whether the issue actually has been litigated *and* whether applying issue preclusion comports with the principles of fundamental fairness. *See Brown County Dep't of Human Servs. v. Terrance M.,* 2005 WI App 57, ¶ 10 n.6, 280 Wis. 2d 396, 694 N.W.2d 458, *review denied,* 2005 WI 134, 282 Wis. 2d 723, 700 N.W.2d 274 (No. 2004AP2379); *Mrozek v. Intra Fin. Corp.,* 2005 WI 73, ¶ 17, 281 Wis. 2d 448, 699 N.W.2d 54. The result in *Village of Westfield* is wrong because we did not—as we do here—consider these questions.

In rejecting the State Bar of Wisconsin's petition to amend Wis. Stat. Rule 809.23 to permit citation to unpublished opinions for persuasive and informational purposes, our Supreme Court observed:

> The court is also cognizant of the potential for unintended abuse inherent in the citation of unpublished appellate opinions for purposes other than those currently permitted. Trial courts and appellate courts might unwittingly give unpublished opinions more weight than that to which they are entitled, merely because they express the reasoning of an appellate tribunal on the same or

similar issue. Moreover, courts might inadvertently give the appearance of improperly having relied on unpublished opinions as precedent for their holdings on the same issue. Erosion of the concept of precedent embodied in published decisional law is too great a price to pay for the sake of informing or persuading a court by means of opinions not designed for citation.

*In re Amendment of Section (Rule) 809.23(3)*, 155 Wis. 2d 832, 834–35, 456 N.W.2d 783 (1990).

We recommend to the bench and bar that, if they insist on embracing the rationale of an unpublished opinion, they use the opinion as a starting line and not the finish line for their own independent research. Not only should they confirm that the authorities cited actually support the legal propositions in the unpublished opinion, they also should make sure that the authorities continue to represent a correct statement of the law. A member of the bench or bar who fails to independently develop his or her own legal rationale does so at his or her own peril.