In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1415

GELAB COSMETICS LLC,

*Plaintiff-Appellant,*

*v.*

ZHUHAI AOBO COSMETICS CO., LTD., *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-05475 — **Thomas M. Durkin**, *Judge.*

———————————

ARGUED JANUARY 8, 2024 — DECIDED APRIL 24, 2024

———————————

Before WOOD, SCUDDER, and ST. EVE, *Circuit Judges.*

WOOD, *Circuit Judge.* This case brought in Illinois federal court is ostensibly about trade secrets, but lurking just beneath the surface is a corporate-ownership dispute. The latter issue is also at center stage in an ongoing lawsuit in New Jersey state court. The district court in the Illinois case stayed its proceedings, citing the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). It reasoned that judicial economy favors waiting for the New Jersey

court to determine who owns the company. At that point, it will be in a position to turn to the trade-secrets claims. We see no reversible error in that case-management plan, and so we affirm the order granting the stay.

**I**

The parties present two vastly different versions of events. They agree only on one point: their identities. (We use the shorthand the parties have adopted for themselves, though we understand that some names are surnames and some are given names.) GeLab Cosmetics LLC ("GeLab"), the named plaintiff, is a New Jersey limited liability company that sells nail polish online. Xingwang Chen ("Chen") has exclusive access to GeLab's online retail accounts. Chen and Shijian Li ("Shijian"), both citizens of China, incorporated GeLab. Each of them owns at least 10% of the company.

The main defendant is Zhuhai Aobo Cosmetics, a China-based manufacturer of nail polish. (Zhuhai Aobo is also known as Zhuhai Abgel. We refer to it simply as "Zhuhai.") Zhuhai has three owners: Pingjun Li ("Pingjun"), Ximei Peng ("Ximei"), and Pingyuan Li ("Pingyuan"). Pingjun and Ximei are married and have a daughter, Benhong Li ("Benhong"). Ximei and Benhong each owns a company affiliated with Zhuhai.

Most of the remaining facts are disputed. As Chen tells the story, he and Shijian founded GeLab in 2016, with Chen receiving a 60% ownership interest and Shijian receiving 40%. GeLab entered a joint venture with Zhuhai, under which Zhuhai promised to invest approximately $618,000 in GeLab in exchange for an 80% ownership interest in GeLab. But Zhuhai never sent the money and so did not gain any

ownership of GeLab. Zhuhai instead first became a third-party supplier of nail polish for GeLab, and then it plotted to steal GeLab's business. To that end, Zhuhai began using low-quality materials to manufacture GeLab's products, sold knock-off versions of those products under its own brand, and fraudulently conspired with Shijian to claim majority ownership of GeLab.

Zhuhai's account is quite different. It asserts that Chen was one of its employees and that he was responsible for expanding Zhuhai's business to the United States. With authorization from Zhuhai, Chen traveled to the United States and formed GeLab with Shijian. Chen and Shijian each retained a 10% ownership interest. The remaining 80% went to Zhuhai, which contributed over $1.8 million to GeLab between 2016 and 2019. Everything ran smoothly until Chen got greedy and began diverting GeLab's sales proceeds to two companies he had formed in China. Zhuhai called a meeting of GeLab's members to terminate Chen's authority to manage GeLab and to request that he return all misappropriated funds.

The opening salvo in the litigation among the parties occurred in China, where Shijian sued Chen on February 5, 2021, for embezzling from GeLab. On February 22, 2021, Chen fired back by suing Shijian, Zhuhai, and Zhuhai's three owners in New Jersey state court; in that case, he alleged that he had a 60% and thus controlling interest in GeLab, that Zhuhai did not have any ownership interest in GeLab, and that Shijian owns the remaining 40%. He sought damages and a declaratory judgment. The state defendants counterclaimed, seeking disgorgement of any embezzled funds and a declaratory judgment that Zhuhai owns 80% of GeLab and that each of Chen and Shijian owns 10%. GeLab itself then filed a second

action in New Jersey, naming only Shijian as a defendant and seeking damages for Shijian's alleged involvement in the fraud. Shijian counterclaimed. The state court consolidated the two cases in March 2022. In June it granted partial summary judgment to Shijian on his right to access GeLab's records, and in October it appointed a temporary fiscal agent to audit GeLab, monitor its expenditures, and determine whether Zhuhai ever invested in GeLab.

Not content to await the results of the New Jersey proceedings, on October 6, 2022, GeLab (presumably acting through Chen) filed the present action against Zhuhai, Pingjun, Ximei, Benhong, and the Zhuhai-affiliated companies owned by Ximei and Benhong, in the U.S. District Court for the Northern District of Illinois.

The federal complaint raises theories under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, the Illinois Trade Secrets Act, 765 ILCS 1065/1, and various common-law causes of action. It alleges that Zhuhai stole GeLab's supply-chain information and its process for creating best-selling nail polish. Pingjun supposedly used those trade secrets to sell knock-off products through Zhuhai, and Ximei and Benhong sold similar knockoffs through their own companies. The defendants responded that Zhuhai owns GeLab and that it cannot steal trade secrets from itself. The district court stayed the federal case, concluding that it was parallel to the New Jersey case and that extraordinary circumstances justified abstention under *Colorado River*. GeLab appealed.

## II

First, a word on jurisdiction. Our appellate jurisdiction under 28 U.S.C. § 1291 extends only to "final decisions."

Although a stay is often entered on an interlocutory basis, it can be a final decision for purposes of appellate jurisdiction if it puts the plaintiff "effectively out of court." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 10 (1983). The wrinkle here is that final resolution will occur only if the New Jersey court finds that Zhuhai does own GeLab. In that case, all we would have is the left pocket "robbing" the right pocket—and thus a failure to state a claim under any of the approaches GeLab (from Chen's standpoint, we understand) is putting forward. If the New Jersey court finds instead that Zhuhai does not own GeLab, the Illinois district court will lift the stay and allow Chen to pursue his trade-secrets claims. Despite this lack of symmetry, the Supreme Court has held that appellate jurisdiction under 28 U.S.C. § 1291 exists over this class of abstention-like orders, because they effectively yield jurisdiction to the state court. See *Moses H. Cone*, 460 U.S. at 10; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 713 (1996). This is so even though "there remains some chance that the case will return to federal court to dispose of residual issues." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 646 (7th Cir. 2021).

We now turn to the merits, which concern only whether the district court properly stayed its own proceedings. The *Colorado River* decision recognizes that a stay is one tool for managing parallel state and federal judicial proceedings. While there is no strict prohibition against parallel proceedings, along the lines of the *lis pendens* doctrine that some jurisdictions follow, the Supreme Court has recognized that there will be occasions in which a federal district court should defer to a state court. Although that is precisely what the Court did in *Colorado River* itself (that is, it deferred to Colorado's system for adjudicating water rights), the Court there went out of its

way to stress that such a stay should be entered only rarely. That is because federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them." 424 U.S. at 817. Only if "the presence of a concurrent state proceeding" makes abstention a matter of "wise judicial administration" may a federal court refrain from doing the job the Constitution and Congress assigned to it. *Id.* at 818.[1]

The *Colorado River* analysis turns on two inquiries, both of which put a thumb on the scale against abstention. The first question is whether the state and federal court proceedings are actually parallel; if not, then the federal case must go forward. If so, the second question is whether exceptional circumstances warrant abstention. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646–47 (7th Cir. 2011). The district court answered yes to both. We evaluate its conclusion that the cases are parallel *de novo* and its finding of extraordinary circumstances for abuse of discretion. *Loughran*, 2 F.4th at 647.

---

[1] We are assuming, without deciding, that any stay of federal proceedings in favor of parallel state proceedings is properly analyzed under *Colorado River*. That may not be true. Many such cases—this one included—present only a question of sensible case management for the federal court. The federal court's decision to stay its hand until some other event occurs could be seen as a simple case-management measure, reviewed only for abuse of discretion. Under this understanding, the analysis called for by *Colorado River* is necessary only in situations in which the federal court is attempting to avoid interference with a complex state administrative apparatus. The outcome of the present case is the same either way we approach the question. As the district court and the parties have done, therefore, we use the more demanding *Colorado River* framework.

A

Cases are parallel if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 695 (7th Cir. 1985)). Two cases need not be identical to be parallel, but they must involve "substantially the same parties [] contemporaneously litigating substantially the same issues." *Id.* at 1019 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)).

Here, the named parties in the federal and state proceedings are not identical. Chen is the named plaintiff in the state case, while the company GeLab is listed as the plaintiff in the federal case. While Zhuhai and two of Zhuhai's owners (Pingjun and Ximei) are defendants in both cases, each suit has other defendants unique to that suit—Shijian and Zhuhai's third owner (Pingyuan) in the state suit, and Benhong and the two Zhuhai-affiliated companies in the federal suit. These differences may be more than an attempt by Chen to "simply tack[] on a few more defendants" to try to circumvent *Colorado River*. *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004). Chen had a logical reason not to sue Benhong and the Zhuhai-affiliated companies in the state suit: he accuses them only of selling knockoff products, not of helping Zhuhai falsely claim ownership of GeLab. Only the ownership assertion is at issue in the state case. The same is true of Chen's decision to sue Shijian and Pingyuan in the state suit but not in the federal suit: Chen says that Shijian and Pingyuan helped Zhuhai falsely claim ownership of GeLab, but he does not accuse them of stealing GeLab's trade secrets.

But "[p]recisely formal symmetry is unnecessary." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011). Cases involve *substantially* the same parties so long as the parties "have nearly identical interests." *Freed*, 756 F.3d at 1019 (quoting *Caminiti & Iatarola v. Behnke Warehousing*, 962 F.2d 698, 700 (7th Cir. 1992)). That is the situation here, because the parties are seeking the same relief in both cases. Chen wants the New Jersey court to find that he owns a majority of GeLab and that Zhuhai owns none of it—the same thing he hopes to show in federal court in order to prevail on his trade-secrets claims. The same is true of the defendants. They want the federal court to find that Zhuhai owns a majority of GeLab. If that were true, then the federal suit would be a senseless action by Zhuhai against itself. This relief is exactly what Zhuhai and the other defendants are pursuing in New Jersey: a declaration that Zhuhai owns 80% of GeLab and that Shijian and Chen own the remaining 20%.

The federal and state cases also "arise from the same set of facts." *Freed*, 756 F.3d at 1019 (citing *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). The characterization of Zhuhai's interactions with GeLab—as owner or manufacturer—is central to both. And because the ownership dispute at the heart of both cases "is predicated on the same facts," it "will be resolved largely by reference to the same evidence," *Tyrer*, 456 F.3d at 756: GeLab's documents of incorporation, its meeting minutes, its financial records, and its communications with Zhuhai. Chen argues that the federal case will require evidence about GeLab's trade secrets, but that evidence will become relevant only if the state court first concludes that Zhuhai does not own GeLab.

Overall, there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Construction*, 780 F.2d at 695. If the state court finds that Zhuhai (through its members) owns 80% of GeLab, Zhuhai will promptly dismiss the federal lawsuit; it will not maintain a case against itself.

Chen argues that even if he loses the ownership dispute, he still would own 10% of GeLab and could, as a minority member, sue GeLab and Zhuhai for diverting GeLab's sales to Zhuhai and the Zhuhai-affiliated companies. But that would be a different suit entirely—one bringing claims for breach of duty and corporate waste, not for violations of trade-secrets laws. Moreover, even if Chen's federal complaint could support those claims, the critical issue would shift from the propriety of abstention to the existence of subject-matter jurisdiction. All parties agree that Chen owns at least part of GeLab. GeLab is a limited-liability company, and so it takes on Chen's Chinese citizenship. *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006). That means that all parties involved in Chen's hypothetical lawsuit against GeLab and Zhuhai are foreign citizens, and so diversity (and alienage) jurisdiction would be lacking. See 28 U.S.C. § 1332(a). And Chen could no longer rely on his claim under the Defend Trade Secrets Act to support federal-question jurisdiction over his case. See 28 U.S.C. § 1331. He would need to tether his state-law claims to some other federal claim, and none comes readily to mind.

One obvious question remains: What happens if the state court finds that Zhuhai does *not* own GeLab? Chen argues that there will then "be more work for the federal court to do," *Loughran*, 2 F.4th at 649, in that the court would have to reach

Chen's trade-secrets claims. But "this one-sidedness is neither
unusual nor fatal to a finding that the two cases are parallel."
*Id.* The case might well get past the ownership dispute, but
because that dispute must be resolved before the district court
can reach the trade-secrets issues, "it was rational for the dis-
trict court to determine that 'the state court litigation will be
an adequate vehicle for the complete and prompt resolution'
of the larger dispute." *Freed*, 756 F.3d at 1021. But see *Ernest
Bock, LLC v. Steelman*, 76 F.4th 827, 841 (9th Cir. 2023) (disa-
greeing with our circuit's approach and holding that cases are
parallel only if all possible outcomes of the state case will nec-
essarily dispose of the federal case).

B

Our inquiry does not end there. A court may stay a federal
case pending a parallel state proceeding only if abstention is
justified by exceptional circumstances. We have identified ten
non-exhaustive factors relevant to this question. These are not
a rigid or exclusive set of criteria; they are instead guideposts
for the ultimate inquiry: Was a decision to abstain an abuse of
discretion? We find that at least seven factors support the dis-
trict court's decision, and that it was reasonable for the court
to rely on them. We summarize the factors briefly, indicating
which favor abstention ("yes"), which do not ("no"), and
which are up in the air.

> [1—no] Whether the state has assumed jurisdiction
> over property. The district court reasoned that this fac-
> tor favored abstention because the state court ap-
> pointed a fiscal agent to control GeLab's assets until the
> ownership dispute is resolved. But Chen counters with
> a good point: the federal case seeks to recover the al-
> legedly ill-gotten gains of Zhuhai, Zhuhai's owners,

and the Zhuhai-affiliated companies, not any assets held by GeLab. It is the defendants' assets that are relevant in the federal case, and the state court has not assumed jurisdiction over those assets.

[2—yes] <u>The inconvenience of the federal forum.</u> The parties already are litigating in New Jersey, and litigating in two distant fora is less convenient than litigating in one.

[3—yes] <u>The desirability of avoiding piecemeal litigation</u>. The ownership dispute at the heart of both cases will be resolved largely by sifting through meeting minutes and communications between GeLab and Zhuhai, many of which will have to be translated from Mandarin. Lifting the stay would require that task to be done by two courts, "duplicating the amount of judicial resources required to reach a resolution." *Clark*, 376 F.3d at 687.

[4—yes] <u>The order in which jurisdiction was obtained by the concurrent fora.</u> The federal complaint was filed nearly 20 months after the state complaint.

[5—yes] <u>The source of governing law.</u> Chen's claims in the federal suit arise under both state law and the federal Defend Trade Secrets Act. Although "the presence of federal-law issues must always be a major consideration weighing against surrender," *Moses H. Cone*, 460 U.S. at 26, the district court wisely stayed the federal case rather than dismissing it. In doing so, the court did not surrender the federal issues to the state court; the state court will resolve only the ownership dispute, which turns on New Jersey law and is

therefore better left to the New Jersey courts. See *Clark*, 376 F.3d at 688. If any federal issues remain after the state court resolves the ownership dispute, the district court can lift the stay and adjudicate those issues. The stay thus does not deny Chen his "right to a federal forum" to adjudicate his federal claims. *Tyrer*, 456 F3d at 757.

[6—yes] The adequacy of state-court action to protect the federal plaintiff's rights. We see no reason think the New Jersey court might be biased against Chen, who, like all the defendants, is a citizen of China. If New Jersey has an interest in these cases, it is an interest in finding the true owner of GeLab, the only party in the ownership dispute that has any connection to New Jersey.

[7—yes] The relative progress of state and federal proceedings. When the district court ruled on the defendants' motion for a stay in March 2023, the state court had fixed late April as the cut-off date for discovery. Thus, when the district court entered a stay, "the controversy appeared to be closer to a resolution in the state proceedings than in the federal." *Caminiti & Iatarola*, 962 F.2d at 702. Granted, the state court has since repeatedly extended the time for discovery. Even so, the state court has progressed further toward a final resolution than the district court. See *Huon*, 657 F.3d at 648.

[8—yes] The presence or absence of concurrent jurisdiction. Either court could hear all claims in both lawsuits, and "the availability of concurrent jurisdiction weigh[s] in favor of a stay." *Clark*, 376 F.3d at 688.

[9—no] The availability of removal. State-court defendants who are unable to remove state-law claims against them sometimes try to repackage those claims into a federal case against the state-court plaintiff. See, *e.g.*, *Loughran*, 2 F.4th at 644–45. In those cases, "[t]he unavailability of removal *favors* a stay, because the purpose of this factor is to prevent litigants from circumventing the removal statute." *Id.* at 650 (emphasis in original). This is not such a case. Chen brought both lawsuits, and if all he wanted was to be in federal court, he could simply have brought all his claims there. This factor is therefore irrelevant, but "because of the presumption against abstention, absent or neutral factors weigh" against abstention. *Huon*, 657 F.3d at 648.

[10—not addressed] The vexatious or contrived nature of the federal claim. Chen has not explained why he brought these claims in the Illinois federal court rather than adding them to his state case. That raises a potential concern about forum-shopping or delay. See *Freed*, 756 F.3d at 1024. But the district court did not make a finding on this, nor will we. Even if we were to count this factor as something disfavoring abstention, it would not tip the balance given the strength of the other points.

Chen argues that the district court erred by blending some of the factors and omitting some factors altogether. He points to *Huon*, where we determined that a district court had abused its discretion when it relied on only three factors and gave only an abbreviated explanation for its choices. 657 F.3d at 648–49. This case is a far cry from *Huon*. Here, the court carefully analyzed which factors favored abstention and

which did not. All that is needed is a "careful weighing of the factors pertinent to the case at hand," *Sverdrup Corp. v. Edwardsville Community Unit School Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997), and the district court met that bar.

### III

We AFFIRM the district court's order staying its proceedings pending the outcome of the New Jersey litigation.