In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-3069

JOEL CIELAK and BARRON HODGES,

*Plaintiffs-Appellants*,

*v.*

NICOLET UNION HIGH SCHOOL DISTRICT, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:22-cv-00819 — **J. P. Stadtmueller**, *Judge.*

ARGUED MAY 24, 2024 — DECIDED AUGUST 12, 2024

Before EASTERBROOK, KIRSCH, and LEE, *Circuit Judges*.

KIRSCH, *Circuit Judge*. While attending Nicolet High School
(NHS) in the late 1970s and early 1980s, Joel Cielak and Barron
Hodges were sexually abused by David Johnson, a teacher at
NHS. After Hodges reported the abuse in the summer of 1983,
members of the Nicolet Union High School District board
confronted Johnson but kept him employed at NHS. For
Hodges, the abuse stopped, and Johnson left him alone for the
remainder of his time at NHS. Johnson's continued presence

at the school, however, caused Hodges mental anguish. Unfortunately, for Cielak, who had graduated from NHS in 1982, Johnson's abuse continued.

Cielak and Hodges sued numerous parties—including NHS, the school district, and members of the board—raising claims under 42 U.S.C. § 1983, for violation of their Fourteenth Amendment substantive due process and equal protection rights, and under 42 U.S.C. § 1985, alleging a conspiracy to violate their equal protection rights. Defendants filed a motion to dismiss, which the court granted, dismissing the claims with prejudice and denying plaintiffs' leave to amend their complaint.

On appeal, plaintiffs do not challenge the district court's conclusion that they failed to state claims premised on Johnson's abuse predating Hodges's 1983 allegation. Instead, they argue that they plausibly pleaded claims based on the post-allegation abuse of Cielak and the psychological injuries Hodges suffered because of Johnson's continued presence at NHS. But Hodges claims are time barred, Cielak's allegations of post-allegation harms do not amount to violations of his substantive due process or equal protection rights, and the court did not abuse its discretion in denying them leave to amend, so we affirm.

I

This appeal arises out of a motion to dismiss, so we accept the well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but we do not presume the truth of legal conclusions and conclusory allegations. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023).

David Johnson was a math teacher and the chair of the math department at Nicolet High School—a prominent member of the faculty and heavily involved in the school community. In 1978 Johnson contacted the mother of Joel Cielak, an eighth grader. Johnson told Cielak's mother that he was conducting a physiological study and asked if Cielak would participate—Cielak later agreed.

This study was a pretext for abuse, which began once Cielak started at NHS later in 1978. Around once a week, Johnson would pick Cielak up from school and take him to his apartment, where he would molest Cielak, maintaining the ruse of the physiological study. Around the spring of 1980, Cielak told his physical education teacher about Johnson's conduct, but no action was taken. The abuse continued while Cielak was a student and after his graduation in 1982, lasting until he was in his twenties. All the while, Johnson kept up the charade of the physiological study, at some points sending Cielak checks that made references to "studies" in the memo lines.

Cielak was not Johnson's only victim. Barron Hodges began attending NHS in 1981 and was in Johnson's math class in the spring of 1983. Johnson, as he had done with Cielak, asked Hodges if he wanted to participate in a "research project" regarding physiology. On four occasions that spring, Hodges went to Johnson's apartment, where Johnson abused him in the same manner as he did Cielak.

Later that year, Hodges attended summer school and told a teacher about Johnson's behavior, describing how the study involved making contact with Johnson's genitals. The teacher told her husband, who contacted the police, but they told him to contact NHS. Soon after, Myra Taxman, a Nicolet Union

High School District board member, met with the teacher, ex-
plaining that the board knew of Hodges's allegation and that
it had handled the issue.

Indeed, the board, once it became aware of the allegation,
met in a closed session with Johnson and confronted him
about the accusation. It agreed to continue Johnson's employ-
ment at NHS but imposed conditions and appointed an NHS
staff member to supervise Johnson. When Hodges returned to
NHS in the fall of 1983, an NHS faculty member told Hodges
that Johnson would leave him alone, and Johnson did so for
the remainder of Hodges's time at NHS. But sharing the
school with his abuser caused Hodges mental anguish.

Decades later, in 2016, a former student reported John-
son's abuse to NHS. In response, NHS and the school district
retained independent counsel to conduct an investigation.
The investigator interviewed members of the board and un-
covered the board's response to Hodges's summer of 1983 al-
legation. He also found that "[n]one of the individuals who
were interviewed were aware of any incidents or misconduct
involving Mr. Johnson after 1983." NHS and the school dis-
trict released the investigator's findings and sent a letter to
NHS alumni summarizing his conclusions. Johnson died by
suicide shortly after the findings were released.

Cielak and Hodges sued, among others, NHS, the school
district, and three members of the school district board in
their individual and supervisory capacity—Gerald Haig,
Myra Taxman, and Robert Strauss. They raised federal and
state law claims, including: (1) claims under 42 U.S.C. § 1983
for violations of their Fourteenth Amendment substantive
due process rights; (2) § 1983 claims for denial of their Four-
teenth Amendment equal protection rights; and (3) a claim

under 42 U.S.C. § 1985 alleging a conspiracy to deprive them of their Fourteenth Amendment equal protection rights. Plaintiffs also raised, as a separate count, a § 1983 claim for failure to hire, train, and supervise in violation of the Fourteenth Amendment. But this is not a standalone cause of action; it is a theory for holding a municipal entity liable for an employee's constitutional violation. See *Flores v. City of South Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (recognizing the "failure-to-train theory" as a basis for § 1983 liability).

Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim, which the court granted as to the federal claims. After dismissing the federal law claims with prejudice, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. (Plaintiffs do not challenge this decision on appeal, so we discuss it no further.) It also denied plaintiffs leave to amend, concluding that amendment would be futile. Plaintiffs timely appealed.

II

Defendants argue that plaintiffs' claims are barred by the statute of limitations. Dismissal on statute of limitations grounds is proper on a motion to dismiss only when a plaintiff's allegations clearly establish that the claims are untimely. *Milchtein v. Milwaukee County*, 42 F.4th 814, 822 (7th Cir. 2022). Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose (here, Wisconsin), *Wallace v. Kato*, 549 U.S. 384, 387 (2007), as do claims under § 1985, *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992).

The applicable Wisconsin statute of limitations is Wis. Stat. § 893.53. *Cannon v. Newport*, 850 F.3d 303, 305–06 (7th Cir. 2017). Before April 5, 2018, this provided for a six-year statute of limitations, but since then the limit has been three years. Wis. Stat. § 893.53 (2016), amended by 2017 Wis. Act 235 (eff. Apr. 5, 2018). Whether the six or three-year limit applies makes no difference to the outcome here, nor does the fact that plaintiffs were under 18 when some of the abuse occurred. Wis. Stat. § 893.16(1)–(2).

While state law supplies the statute of limitations, federal law governs the accrual of § 1983 and § 1985 claims. *McDonough v. Smith*, 588 U.S. 109, 115 (2019). And such claims accrue "when a plaintiff knows the fact and the cause of an injury." *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quotation omitted). In other words, a plaintiff's claim accrues when he "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief" because, at that point, the plaintiff knows or should know that his constitutional rights were violated. *Towne v. Donnelly*, 44 F.4th 666, 670–71 (7th Cir. 2022) (quoting *Kato*, 549 U.S. at 388).

A

We first address plaintiffs' § 1983 claims against NHS, the school district, as well as Haig, Taxman, and Strauss in their capacities as school board members (which are redundant of the claims against the school district, *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 398 (7th Cir. 2015)). On appeal, plaintiffs focus on the harms following Hodges's 1983 abuse allegation— Johnson's abuse of Cielak a year after his graduation in 1982 and his continued presence at NHS which caused Hodges psychological harm. Both plaintiffs knew of these injuries and

that Johnson was the cause of their injuries in the early 1980s, meaning § 1983 claims against Johnson would clearly be time barred. But plaintiffs are not pursuing § 1983 claims against Johnson. Their constitutional claims are against municipal entities, so they must pursue these claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022).

There is no cause of action under *Monell* solely when there has been a constitutional violation by a subordinate of a municipal entity. To state a *Monell* claim, a plaintiff must also show municipal action and that the action was the cause of the constitutional violation. *Id.* The constitutional violation is the "fact" of the injury, the municipal action is the "cause," and a plaintiff must know (or have reason to know) of both for his claim to accrue. *Amin Ijbara Equity Corp*, 860 F.3d at 493. Simply put, because they proceed under *Monell*, the statute of limitations does not begin to run until plaintiffs knew or had reason to know both that they were harmed by Johnson and that municipal action caused their harm.

1

Turning first to Hodges, his *Monell* claims accrued in the fall of 1983 and are time barred. Hodges knew in the fall of 1983 that he experienced psychological distress because Johnson remained at NHS. While Hodges alleges that the "extent" of his injuries was not fully known until recently, a "cause of action accrues even though the full extent of the injury is not then known." *Wallace*, 549 U.S. at 391 (quotation omitted). Hodges also knew that Johnson was still employed at NHS despite Hodges notifying a teacher of the abuse and thus knew (or at least had reason to know) that defendants' failure to fire or otherwise remove Johnson from NHS caused his

injury. Cf. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022) (noting, in the analogous context of Title IX, that "[a] plaintiff will typically know or have reason to know that a school mishandles their own report of an assault close to the time of the school's inadequate response."). That Johnson remained after Hodges reported the abuse to a teacher might not be enough on its own for us to conclude that Hodges knew or had reason to know his injury was caused by defendants' actions. Indeed, Hodges alleges that he "finally became aware of the school's active role in his continual mental trauma" only after the investigator's findings were released in March 2018. But we need not decide whether it is sufficient, alone, because his complaint notes that, as an "indication that [his] report had been heard," a faculty member at NHS—other than the teacher he made the allegation to—said to him that Johnson would leave him alone. Moreover, he alleges that, in the fall of 1983, he believed the school board knew of his allegation, "took [it] seriously, and were doing everything they could to prevent David Johnson from abusing more students." So while he may not have known exactly the degree or the nature of defendants' role, he knew or had reason to know they bore responsibility for his psychological distress in the fall of 1983 because they were aware of his allegation yet allowed Johnson to remain at NHS.

In sum, Hodges has "affirmatively plead[ed] himself out of court" because his complaint "plainly reveal[s] that the action is untimely." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (cleaned up). His allegations unambiguously show he knew both the fact (Johnson's presence) and cause of his injury (defendants' decision to continue Johnson's employment) and thereby had a complete cause of action under *Monell* in the fall of 1983. And Hodges

makes no argument that the statute of limitations can be tolled to anywhere near the latest dates the claims could accrue to still be within the limitations period.

2

On the other hand, we cannot conclude from the complaint that the statute of limitations bars Cielak's *Monell* claims. It is true that Cielak knew Johnson continued to abuse him after Hodges's 1983 allegation and thereby was cognizant of his injury. But Cielak's allegations, unlike Hodges's, do not clearly show that he knew or had reason to know that the post-allegation injury had any connection to actions by NHS, the school district, or the school board members. Cielak alleges that he told a teacher about the abuse in the spring of 1980 and "[u]pon information and belief … believed or had reason to believe that [the teacher], informed and/or intended to inform the appropriate authorities," yet the abuse continued. But this is far from unequivocally showing Cielak knew or had reason to know that defendants were aware of Johnson's conduct after Cielak graduated and failed to act. Unlike Hodges, Cielak does not allege he received confirmation that his abuse allegation had been reported beyond the initial person he told. Moreover, the district court concluded that Cielak's 1980 abuse allegation did not show defendants had notice of the abuse before Hodges's 1983 allegation, and Cielak does not contest this conclusion. And there is no indication in the complaint that Cielak had knowledge of Hodges's 1983 allegation and thus had reason to know the board knew of Johnson's abuse.

From this, it is unclear when Cielak knew or had reason to know that it was defendants' actions that caused his injuries following Hodges's 1983 allegation. Thus, it is improper to

find his *Monell* claims time barred on a motion to dismiss. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (Dismissal on statute of limitations grounds "is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense.") (emphasis in original).

B

In line with the foregoing analysis, Hodges's § 1983 claims against school board members Haig, Taxman, and Strauss in their supervisory capacities are time barred, but Cielak's are not. A supervisory liability claim under § 1983 requires a showing that the supervisor knew about constitutional violation and was personally involved in it. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). So, similar to a *Monell* claim, a § 1983 supervisory liability claim accrues when a plaintiff had, at least, reason to know both that they had been injured and that the supervisors of the person committing the injury were involved in it. Here, both plaintiffs knew of their post-allegation injuries. And as discussed, in the fall of 1983 Hodges knew or had reason to know that the school board was aware of Johnson's abuse and did not remove him, giving him reason to know of their involvement. By contrast, it is not clear when Cielak reasonably knew of these defendants' role in his injuries.

C

Finally, as to plaintiffs' § 1985 claims, we need not address whether the statute of limitations bars them because plaintiffs have waived their challenge to the dismissal of these claims. The two-sentence discussion of the issue in their opening brief is undeveloped and wholly fails to engage with the reasoning

of the district court. *Bradley v. Vill. of Univ. Park, Ill.*, 59 F.4th 887, 897 (7th Cir. 2023).

## III

Because the § 1985 claims are waived and Hodges's claims are time barred, we only address, on the merits, the dismissal of Cielak's § 1983 claims. Again, he does not contest the district court's conclusion that defendants did not know of the abuse before Hodges's 1983 allegation and thus could not be liable for abuse predating it. Instead, he argues that the district court did not adequately consider Johnson's post-allegation conduct—his abuse of Cielak after Cielak's graduation.

We review such a dismissal de novo. *Bronson*, 69 F.4th at 447. For a complaint to survive a motion to dismiss, it must allege "enough facts to state a claim to relief that is plausible on its face" or, in other words, contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted).

## A

We first address Cielak's objection to the dismissal of his *Monell* claims against NHS and the school district, as well as redundant claims against the three school board members. To establish municipal liability under *Monell*, a plaintiff must first show he was deprived of a federal right. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). This requires proof that: "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Bohanon*, 46 F.4th at 675 (quotation omitted).

Cielak's claims fail at this first step: he has not plausibly pleaded a violation of his substantive due process or equal protection rights because Johnson's post-allegation abuse—after Cielak graduated from NHS—was not done under color of state law. Cielak cannot merely assert that Johnson was a state employee; instead, he must allege that Johnson's "invocation of state authority in one way or another facilitated or enabled the alleged misconduct." *DiDonato v. Panatera*, 24 F.4th 1156, 1160–61 (7th Cir. 2022). In other words, in committing the abuse, Johnson must have been "exercising power 'possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law.'" *Id.* at 1159 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). But once Cielak graduated from NHS, Johnson's abuse was unrelated to his duties as a teacher and was not done pursuant to or facilitated by any authority he had as a teacher. Simply, after 1983, Johnson and Cielak "did not encounter each other as [student and teacher], but as private persons," so Johnson's actions "were those of a private citizen in the course of a purely private [ ] interaction." *Id.* at 1162 (quotation omitted).

Cielak makes much of the fact that Johnson continued to invoke the sham physiological study during the post-allegation abuse, but his allegations do not show that Johnson "was anything other than a private citizen or that his [teaching] duties related to [Cielak's] claims." *Barnes v. City of Centralia, Ill.*, 943 F.3d 826, 832 (7th Cir. 2019). Cielak does not allege that the study was part of Johnson's duties or related to Johnson's employment at NHS. See *Reardon v. Danley*, 74 F.4th 825, 828 (7th Cir. 2023) (finding a public official did not act under color of state law because there were no allegations that "the act was related to his position … or that he possessed any State authority to remove it"). And the fact that Johnson, using his

authority as a teacher, initiated the abuse when Cielak was a student does not mean the abuse after 1983 was enabled by an invocation of state authority. See *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (rejecting plaintiff's argument that abuse was under color of state law because it "would not have occurred if [the teacher] had not first won [the student's] trust and affection while serving as his teacher").

Cielak also argues that Johnson was only able to abuse him after the 1983 allegation because of Johnson's prominence in the community. But influential status is not itself a "sign[] of state authority." Cf. *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995). In abusing Cielak after his graduation, Johnson was "functionally equivalent to … any private citizen" who happens to have influence in a community. *DiDonato*, 24 F.4th at 1161 (quotation omitted). In sum, as Cielak can show no violation of his rights after Hodges's allegation, the district court properly dismissed his § 1983 claims.

B

Cielak does not challenge the dismissal of his § 1983 claims against Haig, Taxman, and Strauss in their personal capacities, so we only address the dismissal of the claims against those defendants in their supervisory capacities. Recall that "[a]n official may be liable in a supervisory capacity if he was 'personally involved in [his subordinate's] constitutional violation.'" *Milchtein*, 42 F.4th at 824 (quotation omitted). But, even assuming these defendants were Johnson's supervisors, after Hodges's 1983 allegation, Johnson committed "no constitutional violation for [them] to condone," so they could not be liable in their supervisory capacities. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

IV

Finally, plaintiffs assert the district court erroneously denied them leave to amend their complaint, a determination we review for abuse of discretion, *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 487 (7th Cir. 2023). Under Federal Rule of Civil Procedure 15, a "court should freely give leave when justice so requires." In assessing a denial of leave to amend, "we consider whether it caused prejudice to the plaintiff, which 'ordinarily requires a party to show how she would have amended her pleading ... in the district court, unless the court closed that door.'" *Schmees*, 77 F.4th at 487 (quotation omitted).

There was no reversible error in denying leave to amend: plaintiffs waited far too long to explain, in any substance, how they would have amended their complaint. They did not alert the district court as to how they would cure the complaint's defects when they sought leave to amend in their brief opposing the motion to dismiss. Even if that was not a sufficient opportunity to make such a showing, once plaintiffs were on notice of their complaint's deficiencies after dismissal, they "could have moved under Federal Rule of Civil Procedure 59(e) or 60(b) for another opportunity" but failed to do so. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 942 (7th Cir. 2018). Further, assuming they had no opportunity whatsoever to notify the district court as to how they would amend, on appeal they "did not indicate in their opening brief what they would have alleged in an amended complaint." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1134 (7th Cir. 2022). Indeed, "[n]ot until their reply brief did [they] provide any concrete information." *Id.* That is too late. *Id.*

AFFIRMED