In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-3338

THOMAS GHELF, *et al.*,

*Plaintiffs-Appellants*,

*v.*

TOWN OF WHEATLAND, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:22-cv-00530 — **William M. Conley**, *Judge*.

ARGUED SEPTEMBER 6, 2024 — DECIDED MARCH 10, 2025

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Thomas Ghelf, Tricia Hansen, Constance and Thomas Klein, Maureen Sommerfeld, and Mississippi Sports and Recreation, Incorporated ("MSR"), brought this action in the district court, alleging that the Town of Wheatland ("the Town"), current and former Town officials, Vernon County ("the County"), the Vernon County Treasurer, and unknown Town and County agents and employees had violated their constitutional rights by engaging in a

harassment campaign. According to the complaint, this campaign included coordinated complaints about the plaintiffs' businesses by Town officials, unlawful arrests of Mr. Ghelf and MSR employees by County officers, failures to respond to the plaintiffs' requests for emergency services by the Town and the County, excessive and inaccurate increases of property tax assessments by the Town, the County's foreclosure action to collect the unpaid taxes and interest, and the Town's designation of a private driveway as a public road.

The district court dismissed the plaintiffs' tax assessment and road claims for lack of subject matter jurisdiction, abstained from exercising jurisdiction over the foreclosure claims, and dismissed the remaining claims for failure to state a claim. We now reverse the dismissal of the plaintiffs' road claims. We affirm the dismissal of the plaintiffs' other claims but our reasoning differs in many instances from that of the district court.

# I

## BACKGROUND

Because this is an appeal of the district court's dismissal of the plaintiffs' complaint, we assume that the well-pleaded factual allegations in the complaint are true. *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1022 (7th Cir. 2024). "Those allegations form the basis of this rendition of the facts." *Id.*

**A. Facts**

**1. The Parties and Properties**

Plaintiffs Mr. Ghelf, Ms. Hansen, the Kleins, Ms. Sommerfeld,[1] and MSR own abutting properties in the Town of Wheatland, Vernon County, Wisconsin. The individuals are all family members.[2] The MSR property contains Mr. Ghelf's and Ms. Hansen's home, an adult entertainment venue, a boat landing, and a campground. Prior to her death, Ms. Sommerfeld lived on abutting property owned by Mr. Ghelf and Ms. Hansen, and the Kleins own and live on another abutting property. The MSR property can only be accessed by a private driveway that runs through the property owned by Mr. Ghelf and Ms. Hansen.

The defendants are the Town of Wheatland, Town Chairman Jayne Ballwahn, former Town Chairman Robert Streeter (now deceased), former Town Supervisor Don Williams, unknown Town agents and employees, Vernon County, County Treasurer Karen DeLap, and unknown County agents and employees.

**2. The Allegations**

In their complaint, the plaintiffs narrate what they characterize as a decades-long harassment campaign that began while Mr. Ghelf was serving as a Town Supervisor along with

---

[1] Ms. Sommerfeld died after the filing of this action. Mr. Ghelf and Ms. Hansen were substituted as the personal representatives of her estate.

[2] Mr. Ghelf and Ms. Hansen are married, and Ms. Sommerfeld is Mr. Ghelf's sister. Ms. Klein is Mr. Ghelf's daughter and is married to Mr. Klein. At the time of the filing of the complaint, Mr. Ghelf and Ms. Sommerfeld owned MSR.

Mr. Streeter from April 2007 to April 2009. This campaign included: coordinated complaints about the plaintiffs' businesses leading to a shutdown of electrical services on their property and the unlawful arrests of Mr. Ghelf and MSR employees; the failure to provide emergency services to Mr. Ghelf, Ms. Sommerfeld, and their brother-in-law; excessive and inaccurate tax assessments and a foreclosure action to collect unpaid taxes and interest; and the designation of a private driveway as a public road.

### i. Campground Contract, Complaints, and Arrests

The complaint alleges that while Mr. Ghelf was a Town Supervisor, Mr. Streeter and Mr. Williams attempted to prevent him from contracting with the County to run a campground, marina, and concession stand at a county park and campground. Mr. Ghelf was nonetheless awarded the contract in 2008. In April 2009, Mr. Streeter and Mr. Williams were elected Town Chairman and Town Supervisor, respectively, defeating Mr. Ghelf and his brother.

In the meantime, Mr. Ghelf and Ms. Sommerfeld had made plans to open a bar, restaurant, and banquet hall on the MSR property in the summer of 2009. Mr. Streeter, Mr. Williams, and a group they formed, De Soto Area Business Partners, coordinated making daily complaints to the Wisconsin Department of Commerce alleging problems with the soon-to-open operation. Consequently, a Wisconsin Department of Commerce inspector ordered the shut off of electrical services to the property just before the business's scheduled opening. The bar, restaurant, banquet hall, and campground, as well as the home of Ms. Sommerfeld and the home of Mr. Ghelf and Ms. Hansen, all lost power in the resulting outage. About one week later, the Wisconsin Department of Commerce's lead

inspector visited the property and, finding no ground for shutting off electrical services, ordered their restoration.

According to the complaint, in August 2009, MSR decided to convert the bar, restaurant, and banquet facility to Gunner's Bar and Girls ("Gunner's"), an adult entertainment venue. Mr. Streeter, Mr. Williams, and the De Soto Area Business Association filed baseless complaints with the Wisconsin Department of Justice and the County Sheriff's Department, alleging the presence of illegal drugs and prostitution at the venue. The Wisconsin Department of Justice found no evidence of illegal activity. Nevertheless, in December 2009, the County Sheriff's Department raided Gunner's and arrested Mr. Ghelf and nine MSR performers for violating the County's obscenity ordinance. According to the plaintiffs, that ordinance is void because in *State ex rel. Teunas v. County of Kenosha*, 418 N.W.2d 833 (Wis. 1988), the Supreme Court of Wisconsin held that Wisconsin counties cannot enact such ordinances.

Mr. Ghelf and MSR sued the County in 2015. The parties reached a settlement agreement on September 6, 2017, dismissing the suit with prejudice and releasing the County and all past, present, and future County officials, employees, and agents from all claims that Mr. Ghelf and MSR had or may have had against them prior to that date.

### ii. Failures to Render Emergency Services

In February 2012, Chuck Sanborn, Mr. Ghelf's and Ms. Sommerfeld's brother-in-law, suffered a heart attack on the plaintiffs' property. Sanborn's daughter called emergency services, but the Town did not respond to the call and the County's emergency responders "took more than 45 minutes

to an hour before responding."[3] Sanborn died before emergency services arrived. Many people later told Sanborn's family members that the Town failed to respond because the emergency responders believed Mr. Ghelf was the one in danger.

In January 2016, Ms. Sommerfeld called the County Sheriff's Department to request assistance in dealing with unruly patrons at Gunner's. The Sheriff's Department responded sixty to ninety minutes later. By that time, Mr. Ghelf and Ms. Sommerfeld had been beaten up, and Ms. Sommerfeld had suffered major injuries. The Sheriff's Department made no arrests and informed Mr. Ghelf that if future requests were made for assistance at Gunner's, "then the Sheriff's Department would ticket [Mr.] Ghelf for disorderly conduct if the Sheriff's Department was going to ticket someone else."[4] In contrast to the plaintiffs' experience, the appropriate emergency services respond promptly to calls from "other similarly situated residents and businesses."[5]

### iii.  Property Tax Assessments and Foreclosure Proceedings

In 2009, the Town drastically increased the property tax assessments on MSR's property: from 2008 to 2009, gross taxes increased from $205.78 to $33,067.17 on the boat landing parcel and from $6,434.38 to $12,647.83 on the Gunner's parcel. Mr. Ghelf challenged the assessments at the Town's 2009 Open Book Meeting, and Town Assessor Charlotte Johnson

---

[3] R.1 ¶ 60.

[4] *Id.* ¶ 66.

[5] *Id.* ¶ 68.

told Mr. Ghelf that his objections would have to be reviewed.[6] Mr. Ghelf again objected to the assessments at the 2009 Board of Review Meeting, held immediately after the 2009 Open Book Meeting, but the Board did not take any action at the meeting and did not meet again to address Mr. Ghelf's concerns.

MSR did not receive notice of an open book or Board of Review meeting in 2010, and from 2010 to 2013, MSR did not receive any notices about its tax assessments. Ms. Sommerfeld attended the 2012 Open Book Meeting on MSR's behalf. There, Johnson informed Ms. Sommerfeld that she would be willing to reduce MSR's 2011 assessment and to recommend to the Board of Review that it reduce MSR's 2009–2010 assessments, and that her earlier assessments were based on unreliable maps. Because only one member of the Town Board was present at the 2012 Open Book Meeting, however, a Board of Review meeting did not convene.

In 2014, Johnson's tax assessor license was revoked and the Wisconsin Department of Revenue ordered the Town to correct Johnson's mistakes. At the 2014 Open Book Meeting, the new tax assessor told Ms. Sommerfeld that he would adjust MSR's assessments "in the Fall."[7] Again, the Board of Review did not hold a hearing because too few Town Board members were present. As of the time of the filing of the complaint, the County had not altered MSR's tax assessments.

---

[6] At open book meetings, property owners may discuss property assessments with the assessor and the assessor may make necessary changes to the assessment. Wis. Stat. § 70.45.

[7] R.1 ¶ 91.

In 2015, MSR filed a petition for a writ of mandamus in Vernon County Circuit Court. It sought to require the Town to reconvene the Board of Review to hear MSR's challenges to the 2009–2013 tax assessments. The Town moved for summary judgment, arguing that MSR failed to comply with the statutory prerequisites to challenge its assessments. The circuit court granted this motion. The Court of Appeals of Wisconsin affirmed that decision in 2016, holding that MSR had failed to satisfy the necessary statutory prerequisites. MSR did not present, the court held, any evidence in the circuit court "that it filed a correct and timely written objection with the clerk of the board of review, or obtained a waiver of that requirement, at any board of review meeting between 2009 and 2013."[8]

In 2022, the County filed a tax lien foreclosure action to recover MSR's unpaid taxes and interest. The Vernon County Circuit Court stayed those proceedings pending resolution of this federal suit.

### iv.  Road Declaration

In July 2020, the Town passed a resolution "validat[ing]" Pennel Lane as a public road.[9] The plaintiffs claim that this road is a private driveway with a commercial permit rather than a public road. The Wisconsin Department of Transportation issued driveway permits to the Ghelfs in the 1960s that indicate that it is a private road. Some maps refer to the driveway as "Ghelf Road" and others designate the southern

---

[8] R.11-2 ¶ 12.

[9] R.16-1 ¶ 7.

portion of the driveway as "Pennel Lane."[10] Throughout their ownership, the Ghelfs have maintained the entire driveway. A Town-owned vehicle entered the road on only one occasion: in December 2021, a snowplow entered the driveway even though the driveway already had been plowed. The plow traveled at an excessive speed and struck Mr. Klein.

In August 2020, Mr. Ghelf and MSR filed a petition for certiorari review in Vernon County Circuit Court seeking an order invalidating the Town's resolution. In January 2021, the state court dismissed the petition for failure to exhaust administrative remedies. That decision was not appealed.

### 3. The Claims Set Forth in the Complaint

The plaintiffs filed this action in the district court on September 15, 2022. In claims brought under 42 U.S.C. § 1983, their complaint set forth a number of constitutional violations. First, the plaintiffs claimed that the defendants' tax assessments and foreclosure action constitute a constructive taking of their property in violation of the Fifth and Fourteenth Amendments. Second, they claimed that by asserting that the driveway is a public road, the defendants violated the Fifth and Fourteenth Amendments. Third, they claimed that the defendants retaliated against the plaintiffs' operation of an adult entertainment venue and therefore violated the First Amendment. In support of this claim, the plaintiffs alleged that the defendants organized a harassment and intimidation campaign by overburdening Gunner's with regulatory actions, failing to respond to requests for emergency services, excessively raising property taxes, seeking to foreclose on the MSR property, and claiming the driveway is a public road.

---

[10] R.1 ¶ 100.

Fourth, they claimed the defendants violated the Fourteenth Amendment's Equal Protection Clause by conducting a harassment campaign against them and, in particular, by failing to provide emergency services. Fifth, the plaintiffs claimed that the defendants violated the Fourteenth Amendment's Due Process Clause by harassing the plaintiffs, particularly by constructively taking two MSR property parcels and by failing to render emergency services.

The plaintiffs requested: (1) a declaration under 28 U.S.C. § 2201 that the disputed road is a private driveway and, relatedly, a declaratory judgment that there is no public road on their property; (2) a declaration under 28 U.S.C. § 2201 of the correct amount of property taxes and interest and, relatedly, a declaratory judgment that the assessed taxes and interest are invalid; (3) an injunction requiring that the Town not represent that the disputed road is public and that it "take reasonable steps to correct any and all Town generated maps;"[11] (4) an injunction requiring the Town and the County to cease their "efforts to foreclose on [p]laintiffs' property and to enter into a reasonable plan with the [p]laintiffs for the correction of the amount of property taxes owed (if any) and the payment thereof;"[12] (5) compensatory and punitive damages; and (6) the plaintiffs' "costs, interest[,] and reasonable attorneys' fees."[13]

Going forward, we will refer to the plaintiffs' claims based on the property tax assessments as the "tax assessment

---

[11] R.1 at 36.

[12] *Id.*

[13] *Id.*

claims," the claims based on the ongoing foreclosure action as the "foreclosure claims," and the claims based on the disputed road as the "road claims."

## B. Disposition in the District Court

The defendants filed motions to dismiss under sections 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted these motions.

The district court first dismissed some of the claims for lack of subject matter jurisdiction and on abstention grounds. In its view, the *Rooker-Feldman* doctrine deprived it of subject matter jurisdiction over the tax assessment and road claims and perhaps over the foreclosure claims. It also held that the Tax Injunction Act barred it from ruling on the tax assessment and foreclosure claims for declaratory and injunctive relief. It further held that comity required it to abstain from considering the plaintiffs' "related state tax claims" for compensatory and punitive damages. *Ghelf v. Town of Wheatland*, No. 22-cv-530, 2023 WL 7384905, at *8 (W.D. Wis. Nov. 8, 2023) (citing *Fair Assessment in Real Est. Ass'n v. McNary*, 454 U.S. 100, 116 (1981)). Further, the district court concluded that it was required to abstain from exercising jurisdiction over the plaintiffs' tax assessment, road, and foreclosure claims under the *Younger* abstention doctrine.

The district court dismissed the plaintiffs' remaining claims under Rule 12(b)(6). It held that all claims Mr. Ghelf and MSR may have had against the County, County Treasurer DeLap, and unknown County agents and employees for conduct occurring on or before September 6, 2017, were barred by the settlement agreement, and any remaining

claims were time-barred by the applicable statute of limitations.[14]

## II

## DISCUSSION

### A. The Tax Assessment and Foreclosure Claims

The defendants maintain that the Tax Injunction Act ("TIA") deprived the district court of subject matter jurisdiction over the tax assessment and foreclosure claims. The plaintiffs disagree and contend that, "at a minimum," the TIA does not foreclose their First, Fifth, and Fourteenth Amendment claims for compensatory and punitive damages.[15]

The defendants are correct. The TIA and comity principles deprived the district court of jurisdiction over the tax assessment and foreclosure claims. The TIA provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The statute's coverage is broad; it deprives district courts of jurisdiction over suits seeking injunctive and declaratory relief from all state taxes, including municipal

---

[14] See *supra* regarding the details of the settlement agreement. We do not reach the parties' arguments with respect to the impact of the settlement agreement because, as described later in this opinion, we find all claims potentially barred by the settlement agreement to be barred by the applicable statute of limitations.

[15] Appellants' Br. 27.

and local taxes.[16] The tax assessment and foreclosure claims for injunctive and declaratory relief are therefore barred by the TIA as long as a "plain, speedy and efficient remedy" is available. *Id.*

The district court correctly concluded that the plaintiffs had such a remedy. It noted that "Wisconsin Stat. Chs. 70 and 74 provide a comprehensive scheme for challenging property tax assessments, which the state court determined that MSR did not follow."[17] Moreover, continued the district court, "federal courts have repeatedly held that Wisconsin's processes for challenging tax determinations and foreclosures meet the requirement for a plain, speedy, and efficient state court remedy."[18] In sum, the district court correctly held that MSR's plain, speedy, and efficient remedy was its opportunity to challenge the tax assessments in the state writ of mandamus proceedings and that MSR simply did not take advantage of this opportunity.

The district court's decision in this respect is supported by well-established principles. For a remedy to be plain, speedy, and efficient, it must "meet[ ] certain minimal *procedural* criteria" and "provide[ ] the taxpayer with a 'full hearing and

---

[16] *See Scott Air Force Base Props., LLC v. Cnty. of St. Clair*, 548 F.3d 516, 520 (7th Cir. 2008) (first citing *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982); then citing *RTC Com. Assets Tr. 1995–NP3–1 v. Phx. Bond & Indem. Co.*, 169 F.3d 448, 453 (7th Cir. 1999); and then citing *Hager v. City of W. Peoria*, 84 F.3d 865, 868 n.1 (7th Cir. 1996)).

[17] *Ghelf v. Town of Wheatland*, No. 22-cv-530, 2023 WL 7384905, at *8 (W.D. Wis. Nov. 8, 2023) (citing *Hermann v. Town of Delavan*, 572 N.W.2d 855, 858–59 (Wis. 1998)).

[18] *Id.*

judicial determination' at which she may raise any and all constitutional objections to the tax." *Scott Air Force Base Props., LLC v. Cnty. of St. Clair*, 548 F.3d 516, 521 (7th Cir. 2008) (alterations in original) (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 514 (1981)). Indeed, we previously have held that Wisconsin "provides a 'plain, speedy and efficient' remedy for taxpayers seeking to challenge Wisconsin taxes." *Darne v. Wisconsin*, 137 F.3d 484, 489–90 (7th Cir. 1998).

As set forth by the Supreme Court of Wisconsin in *Hermann v. Town of Delavan*, 572 N.W.2d 855 (Wis. 1998), Wisconsin law requires that a taxpayer "objecting to either the valuation or the amount of property assessed by the taxing district … file such objection with the clerk of the board of review prior to adjournment of public hearings by the board." *Id.* at 858 (citing Wis. Stat. § 70.47(7)(a)). An individual who files an objection may then "appeal the determination of the board by an action for certiorari," "file a written complaint with the department of revenue requesting that the department revalue the property and adjust the assessment thereof," or "file a claim against the taxation district for an excessive assessment to recover any amount of property tax imposed as a result of the excessive assessment." *Id.* (citing Wis. Stat. §§ 70.47(13), 70.85, 74.37(2)(a)).

In the state writ of mandamus suit, the Town presented evidence showing MSR did not "file[] a written objection to its tax assessments before or during the Town board of review meetings for 2009, 2010, 2011, 2012, or 2013 or obtain[] waiver of the written objection requirement at those meetings."[19] MSR presented no evidence to the contrary. The Court of

---

[19] R.11-2 ¶ 12.

Appeals of Wisconsin therefore found the "record establishe[d] as undisputed" that MSR failed to object or receive a waiver as required by section 70.47(7)(a) of the Wisconsin Statutes and affirmed the circuit court's order dismissing MSR's petition for a writ of mandamus.[20]

MSR had a plain, speedy, and efficient remedy in the Wisconsin courts: the state writ of mandamus case provided MSR "a 'full hearing and judicial determination'" where it could have raised its constitutional objections.[21] Because Wisconsin provided MSR with such a remedy, the district court had no jurisdiction over the plaintiffs' tax assessment and foreclosure claims for injunctive and declaratory relief.

The district court also refused to hear the merits of the plaintiffs' "related state tax claims" for compensatory and punitive damages.[22] It stated that "federal district courts are generally directed to abstain from considering claims for damages over related state tax claims" and that "comity requires taxpayers seeking damages to pursue relief in state courts, assuming that state-court remedies are 'plain, adequate, and complete,' as they are here."[23] We agree. "Principles of comity

---

[20] *Id.*

[21] *Scott Air Force Base Props.*, 548 F.3d at 521 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981)); R.11-2 (showing Wisconsin state courts considered and decided MSR's petition); *e.g., Cath. Charities Bureau, Inc. v. Lab. & Indus. Rev. Comm'n*, 3 N.W.3d 666, 671–72, 684–92 (Wis. 2024) (showing Wisconsin state courts can decide taxpayers' federal constitutional claims).

[22] *Ghelf,* 2023 WL 7384905, at *8.

[23] *Id.* (quoting *Fair Assessment in Real Est. Ass'n v. McNary*, 454 U.S. 100, 116 (1981)).

bar a taxpayer from contesting the validity of a state tax in a section 1983 damage action if there is a 'plain, adequate, and complete' state remedy available." *Werch v. City of Berlin*, 673 F.2d 192, 194 (7th Cir. 1982) (quoting *Fair Assessment in Real Est. Ass'n*, 454 U.S. at 116). This principle is rooted in "[t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts." *Fair Assessment in Real Est. Ass'n*, 454 U.S. at 115–16 (alteration in original) (quoting *Matthews v. Rodgers*, 284 U.S. 521, 525 (1932)). "[T]he 'plain, adequate, and complete' requirement in the comity analysis is identical to the 'plain, speedy and efficient' requirement under the Tax Injunction Act." *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020) (quoting *Fair Assessment in Real Est. Ass'n*, 454 U.S. at 116 n.8). Because the plaintiffs' "plain, speedy and efficient" remedy was thus also "plain, adequate, and complete," the district court lacked jurisdiction over the tax assessment and foreclosure claims. *Id.*

In sum, the district court correctly determined that the TIA and comity principles prevented it from reaching the merits of the plaintiffs' tax assessment and foreclosure claims for declaratory, injunctive, compensatory, and punitive relief. It correctly dismissed these claims.[24]

---

[24] We therefore need not reach the plaintiffs' contentions that the district court erred in holding that the *Rooker-Feldman* and *Younger* abstention doctrines also bar these tax-related claims. We also note before proceeding that we are not persuaded by the defendants' argument that this case should be stayed under the *Colorado River* abstention doctrine in light of the state foreclosure proceedings. The *Colorado River* doctrine is inapplicable when the federal and state court actions are not parallel. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). The ongoing ( … continued)

## B. Statute of Limitations

We now turn to the defendants' contention that all the plaintiffs' claims that arose before September 15, 2016 are barred by the statute of limitations. The plaintiffs' allegations focus heavily on conduct that occurred before September 15, 2016, including the alleged failures to provide emergency services and the overburdening of Gunner's with regulatory actions. The plaintiffs submit that their claims are not barred by the statute of limitations and invoke the continuing-violation doctrine.

The district court held that Wisconsin's statute of limitations barred the "plaintiffs' remaining claims related to various alleged actions by defendants before 2009 and their alleged failure to provide emergency services in 2012 and January 2016." *Ghelf*, 2023 WL 7384905, at *10. It highlighted the time constraints imposed by the statute of limitations: six years "[f]or alleged constitutional injuries that occurred before April 5, 2018" and, given an amendment in Wisconsin law, three years "for injuries that occurred after April 5, 2018."

---

state suit is an in rem action for foreclosure of tax liens, and the only parties to the state action are MSR and the County. The state action is thus missing a key defendant to this federal suit, the Town, against which individual allegations are made, such as the allegedly improper assertion that the disputed road is public. *Cf. Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). And only in this federal suit do the plaintiffs request "[a] declaratory judgment that there is no public road on the [p]laintiffs' property" and "[a]n injunction against the Town of Wheatland instructing it not to represent to anybody that there is a public road on the [p]laintiffs' property, and to take reasonable steps to correct any and all Town generated maps." R.1 at 35–36; *cf. GeLab Cosms. LLC v. Zhuhai Aobo Cosms. Co.*, 99 F.4th 424, 429 (7th Cir. 2024). Because the state and federal cases are not parallel, the *Colorado River* abstention doctrine is inapplicable.

*Id.* The court then found that because the "[p]laintiffs filed their federal court complaint on September 15, 2022, … any claim based on events occurring before September 15, 2016 or between April 5, 2018 and September 15, 2019 is time-barred." *Id.* The district court held that the plaintiffs' remaining claims related to events that occurred before September 15, 2016, and therefore were untimely. *See id.* It declined to use the continuing-violation doctrine because there were no acts over which it had jurisdiction that could have potentially brought "the earlier actions within the applicable statutes of limitations." *Id.*

"Claims under § 1983 borrow the statute of limitations for personal injury actions in the state in which the cause of action arose." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Prior to April 5, 2018, section 893.53 of the Wisconsin Statutes "provided for a six-year statute of limitations, but since then the limit has been three years." *Id.* (citing Wis. Stat. § 893.53 (2016), *amended by* 2017 Wis. Act 235 (eff. Apr. 5, 2018)). Under federal law, which governs the accrual of § 1983 claims, "a plaintiff's claim accrues when he 'has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief' because, at that point, the plaintiff knows or should know that his constitutional rights were violated." *Id.* (quoting *Towne v. Donnelly*, 44 F.4th 666, 670–71 (7th Cir. 2022)); *see also Heard v. Sheahan*, 253 F.3d 316, 317–18 (7th Cir. 2001).

We agree with the defendants that the plaintiffs' claims that arose before September 15, 2016, are time-barred. Regarding the improper provision of emergency services in particular, the plaintiffs had a complete and present cause of action

in February 2012 for the failure to render services to Sanborn, and in January 2016 for the County Sheriff's Department's response to Ms. Sommerfeld's request for aid at Gunner's. And concerning the overburdening of Gunner's with regulatory actions, the plaintiffs had a complete and present cause of action in 2009, when Mr. Streeter, Mr. Williams, and the De Soto Business Association made the complaints and when the County Sheriff's Department made the arrests. The plaintiffs' claims regarding the events prior to September 15, 2016, thus accrued over six years before the plaintiffs filed their complaint in federal court on September 15, 2022. *See Cielak*, 112 F.4th at 477. Under the Wisconsin statute of limitations, those claims are untimely. *See id.*

To save their claims from being time-barred, the plaintiffs invoke the continuing-violation doctrine. This doctrine is "a special accrual rule under which a claim accrues not just once but repeatedly as a defendant continually wrongs a plaintiff." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 823 (7th Cir. 2022). The plaintiffs submit that the continuing-violation doctrine applies because the defendants have committed a series of harassing acts against them—in their words, "a pattern of continuing harassment."[25] However, when a defendant commits numerous transgressions, but each act is "wrongful independent of other events," each act is considered discrete and has its own period of limitations. *Moore v. Burge*, 771 F.3d 444, 447 (7th Cir. 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–15 (2002)). Here, the plaintiffs allege acts that were each independently wrongful, such as the failures to render emergency services, the filings of baseless

---

[25] Appellants' Br. 39.

complaints, and the execution of unlawful arrests. The plaintiffs therefore were required to bring their claims arising from these discrete acts within the limitations period applicable to each act. Having failed to do so, their claims arising from acts committed before September 15, 2016, were untimely and were properly dismissed by the district court.

### C. Road Claims

The only claims remaining are the road claims. We now examine whether those claims are precluded by the state court's dismissal of Mr. Ghelf's and MSR's petition for certiorari review.[26] We first decide whether the doctrine of claim

---

[26] Contrary to the defendants' contention and the district court's holding, our jurisdiction over the plaintiffs' road claims is not barred under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine does not apply unless, among the satisfaction of other conditions, the state-court judgment at issue "caused the alleged injury underlying the federal claim." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (en banc). The plaintiffs' road claims are based on the Town's July 2020 declaration that the disputed road is public. This alleged injury was complete before the state court dismissed Mr. Ghelf's and MSR's petition for certiorari review in January 2021. Because the plaintiffs' road claims are independent of the state-court judgment, *Rooker-Feldman* does not bar our jurisdiction. *See id.* at 766–67.

Nor was the district court required to abstain from deciding the plaintiffs' road claims under the *Younger* abstention doctrine. Federal abstention is only appropriate under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny when, among the satisfaction of other conditions, there are ongoing "judicial or judicial in nature state proceedings." *Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir. 1994) (first citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); and then citing *American Fed'n of State, Cnty., & Mun. Emps. v. Tristano*, 898 F.2d 1302, 1305 (7th Cir. 1990)). Because there are no ongoing state judicial ( … continued)

preclusion bars these claims. We then examine whether the doctrine of issue preclusion bars these claims.

### 1. Claim Preclusion

To determine whether the doctrine of claim preclusion bars the plaintiffs' road claims, we apply Wisconsin law. *See Adams Outdoor Advert. Ltd. P'ship v. City of Madison*, 56 F.4th 1111, 1117 (7th Cir. 2023). "Claim preclusion bars all subsequent actions between the same parties as to all matters that were litigated or that might have been litigated in the former proceeding." *Id.* (citing *Teske v. Wilson Mut. Ins. Co.*, 928 N.W.2d 555, 561 (Wis. 2019)). Ordinarily, three elements must be satisfied for claim preclusion to apply: "(1) an identity of the parties or their privies in the prior and present lawsuits; (2) a final judgment on the merits in the prior action; and (3) an identity of the causes of action in the two suits." *Id.* (citing *Teske*, 928 N.W.2d at 561).

In *Hanlon v. Town of Milton*, 612 N.W.2d 44 (Wis. 2000), however, the Supreme Court of Wisconsin held that plaintiffs are not required to join "a § 1983 claim with a certiorari proceeding brought pursuant to Wis. Stat. ch. 68." *Id.* at 49–50. The court highlighted numerous differences between section 1983 claims and chapter 68 certiorari proceedings and concluded that joining these claims would not accomplish "the principles underlying the doctrine of claim preclusion." *Id.* at 49.

Given the Supreme Court of Wisconsin's decision in *Hanlon*, the plaintiffs were not required to join their section

---

proceedings regarding the road claims, the *Younger* abstention doctrine does not apply.

1983 road claims, alleging First, Fifth, and Fourteenth Amendment violations, to Mr. Ghelf's and MSR's petition for certiorari review filed pursuant to section 68.13 of the Wisconsin Statutes.[27] *See id.*; *see also Wilhelm v. Cnty. of Milwaukee*, 325 F.3d 843, 845–46 (7th Cir. 2003) (quoting *Hanlon*, 612 N.W.2d at 48–49) (holding that the plaintiff was not required to bring his section 1983 claim in connection with his petition for certiorari). The plaintiffs' road claims therefore are not barred by claim preclusion.

### 2. Issue Preclusion

We now turn to issue preclusion. We must give a Wisconsin state court judgment the same preclusive effect it would have in Wisconsin state court. *See First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 772 (7th Cir. 2013) (first citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980); and then citing 28 U.S.C. § 1738). Issue preclusion under Wisconsin law is "designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Id.* at 772–73 (quoting *Michelle T. by Sumpter v. Crozier*, 495 N.W.2d 327, 329 (Wis. 1993)). "Wisconsin courts apply the following general rule: 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Id.* at 773 (quoting

---

[27] Mr. Ghelf and MSR also cited section 82.15 of the Wisconsin Statutes as authority for their petition for certiorari review. Section 82.15 provides that "[a]ny person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under" section 68.13 of the Wisconsin Statutes. Wis. Stat. § 82.15.

*Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 497 N.W.2d 756, 762 (Wis. Ct. App. 1993)).

Wisconsin courts analyze issue preclusion questions in two steps. The court first determines "whether issue preclusion can, as a matter of law, be applied." *Dostal v. Strand*, 984 N.W.2d 382, 388 (Wis. 2023). This inquiry requires the court to decide "whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment." *Id.* "An issue is actually litigated when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Id.* (internal quotations omitted) (quoting *In re Est. of Felt v. Felt*, 647 N.W.2d 373, 376–77 (Wis. Ct. App. 2002)). If the court concludes that issue preclusion may be applied, the court next decides "whether the application of issue preclusion would be fundamentally fair." *Id.*

Here, issue preclusion fails at the first step. Mr. Ghelf's and MSR's petition for certiorari review contended that the Town "failed to act according to Ch. 82, Wis Stats., as to the procedure and process necessary to lay out a new town road" and requested an order invalidating the Town's 2020 resolution that "validate[d]" Pennel Lane as a public road.[28] The Vernon County Circuit Court dismissed Mr. Ghelf's and MSR's petition for failure to exhaust administrative remedies. By contrast, the plaintiffs claim in this suit that the defendants violated the First, Fifth, and Fourteenth Amendments by asserting that the driveway is a public road.

---

[28] R.16-1 ¶¶ 7, 16.

The merits of the plaintiffs' constitutional claims were not raised before the state court and were not "determined in the prior proceeding by a valid judgment in a previous action." *Id.* Because the merits of the plaintiffs' claims were not actually litigated and no determination of these issues was essential to the state court's judgment, the road claims are not subject to issue preclusion. *See id.*

Because federal subject matter jurisdiction is proper over the road claims and those claims are not barred by preclusion doctrines, we conclude that the district court improperly dismissed these claims. The district court's judgment as to the road taking claim and First Amendment retaliation claim, to the extent the First Amendment claim arises from the defendants' assertion that the private driveway is a public road, is thus reversed and remanded for further proceedings.

And, because the road claims, although levied against all the defendants, arise from only the Town's and Town Chairman Ballwahn's alleged actions, Mr. Streeter, Mr. Williams, the County, County Treasurer DeLap, and the unknown County agents and employees should be dismissed from this suit. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").

### D. Town Chairman Ballwahn's Personal Involvement

The defendants submit that Town Chairman Ballwahn should be dismissed from this suit because "Plaintiffs have not plead any facts that plausibly suggest that Jayne Ballwahn

was personally involved in a constitutional violation."[29] The plaintiffs argue that they have plausibly alleged that Town Chairman Ballwahn was liable for the claimed constitutional violations. They allege that Town Chairman Ballwahn was the Town's final decisionmaker regarding the road resolution and point to the space for her signature on the Town's 2020 road resolution.

"To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). There must be "some causal connection or affirmative link between the action complained about and the official sued." *Id.*

The plaintiffs' allegations against Town Chairman Ballwahn satisfy this requirement at the motion-to-dismiss stage. The plaintiffs submit that Ms. Ballwahn is the Town Chairman and that she, as one of the defendants, engaged in the allegedly unconstitutional conduct that harmed the plaintiffs. Further, as the plaintiffs point out, the road resolution provided a space for Ms. Ballwahn to sign for the Town as Town Chairman, indicating that she acted on the Town's behalf in declaring the disputed road to be public. Town Chairman Ballwahn's position, in conjunction with the evidence showing that her signature was required to adopt the road resolution, sufficiently establishes an affirmative link between Town Chairman Ballwahn and the actions the plaintiffs allege in their complaint. *See id.* The plaintiffs thus have adequately

---

[29] Appellees' Br. 46. The district court did not address the allegations against Town Chairman Ballwahn in its order dismissing the plaintiffs' claims.

pleaded that Town Chairman Ballwahn "was personally responsible for the deprivation of a constitutional right." *Id.* Town Chairman Ballwahn should not be dismissed from this suit at this point.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs in this appeal.

AFFIRMED in part, REVERSED and REMANDED in part